PER CURIAM.
Leon Garmon, a lawyer, represented Terry Alford in a felony criminal case. Terry Alford’s case went to trial on June 11,1990. In a pre-trial motion to recuse, Garmon suggested that the trial court was biased against Terry Alford and that the trial court had conspired to violate Terry Alford’s civil rights. The trial court denied the motion to recuse. On June 13, 1990, when the jury retired to deliberate on its verdict in that case, the trial court held Garmon in direct contempt of court for his remarks made during the pre-trial motion to recuse and sentenced him to serve six hours in jail. Still on June 13, after the jury had returned a verdict of not guilty in Alford’s case, Garmon was incarcerated for two and one-half hours for that direct contempt; then he posted bond and was released. The Court of Criminal Appeals affirmed the trial court’s judgment. [575 So.2d 1252 and 579 So.2d 709.]
Section 12-1-8, Ala.Code 1975, provides when courts may inflict summary punishment[1] for contempt, and it provides in pertinent part:
“The powers of the several courts in this state to issue attachments and inflict summary punishment for contempts shall not extend to any other cases than:
“(1) Disrespectful, contemptuous or insolent behavior in court, tending in any way to diminish or impair the respect due to judicial tribunals or to interrupt the due course of trial;”
Concerning direct contempt, we have recently stated:
See Rychlak, Direct Criminal Contempt and the Trial Attorney: Constitutional Limitations on the Contempt Power 14:2 American Journal of Trial Advocacy 243 (1990).
*884 “Direct contempts are those committed in the judge’s presence, where all of the essential elements of the contempt are under the eye of the court, and are actually observed by the court. In a direct contempt case, the judge can summarily and instantaneously find the person to be in contempt.”
State v. Thomas, 550 So.2d 1067, 1072 (Ala.1989).[2]
Garmon argues that the judgment of the Court of Criminal Appeals is due to be reversed on two grounds: 1) that the substance of his remarks was not contemptuous and 2) that the delay between his remarks and the trial court’s holding of direct contempt rendered a finding of direct contempt inappropriate in this case. As to Garmon’s first ground, although we do not so hold, because we resolve the case based on Garmon’s second allegation of error, after reviewing the partieular facts of this case we would be inclined to hold that the substance of Gar-mon’s numerous, unsubstantiated claims made against the trial court, which observed his demeanor while he made those claims, could properly subject Garmon to summary punishment for direct contempt.[3]
As to Garmon’s argument that the time lapse between his remarks and the trial court’s holding of direct contempt rendered direct contempt inappropriate, we note that in certain circumstances, particularly where the offender is a lawyer representing a client on trial, the summary punishment associated with direct contempt can properly be postponed until the conclusion of the proceedings. Taylor v. Hayes, 418 U.S. 488, 498, 94 S.Ct. 2697, 2703, 41 L.Ed.2d 897 (1974).
However, as the United States Supreme Court also noted in Taylor, at 497, 94 S.Ct. at *885 2703, “the usual justification of necessity [for summary punishment] ... is not nearly so cogent when final adjudication and sentence are postponed until after trial.” Furthermore, although the allegedly contemptuous behavior occurred on June 11, the trial court did not, until June 18, give Garmon any notice that it had determined that he was in direct contempt and thereby subject to summary punishment. As Taylor says, “where punishment and conviction [for direct contempt] are delayed, ‘it is much more difficult to argue that action without notice of hearing of any kind is necessary to preserve order and enable [the court] to proceed with its business.’ ” 418 U.S. at 498, 94 S.Ct. at 2703. This Court has stated, “Summary procedures, designed to punish direct contempts, are utilized to fill the need for immediate penal vindication of the dignity of the court.” In re Tarpley, 293 Ala. 137, 142, 300 So.2d 409 (1974).
Under the facts of this case, considering not only the time lapse between Gar-mon’s allegedly contemptuous conduct and the trial court’s holding of direct contempt but also the trial court’s complete failure over that time to notify Garmon of its determination that he was in direct contempt of court, we hold that the Court of Criminal Appeals erred in affirming the trial court’s judgment of direct contempt. The judgment is due to be reversed and a judgment rendered in favor of the defendant.
REVERSED AND JUDGMENT RENDERED.
MADDOX, HOUSTON, STEAGALL, KENNEDY and INGRAM, JJ., concur.
ADAMS, J., concurs in the result.

. “Summary” punishment does not refer to the timing of the punishment, but, rather to imposition of punishment without the formal procedures normally involved with criminal actions.

. The law of contempt is now generally set out in Rule 33, Ala.R.Crim.P., effective January 1, 1991.

. Garmon made the following remarks:
"The purpose of the motion I'm now about to put before the Court is that on behalf of Mr. Alford there is no way that we feel that the Court can be in a position to try this case for several reasons: first of all, the pending civil suit in Federal court is still pending. Second, we would expect and would profiler and tell the Court that one of our defenses — as a part of our defense [is] going to be that this is a case that was disposed of and that part of our defense is going to be, we expect to show ... that this is a politically motivated and politically induced situation where Mr. Alford’s employment as shop manager, shop foreman for the former County Commissioner Mr. Wendell Bryant, that after Mr. Bryant was defeated by the incumbent, the man that now presently is holding that office, Mr. Bull Smith, ... made some statements to Mr. Alford that he did not want him running his shop anymore....
"... Mr. Alford, we would also expect the testimony to show, is going to testify that Mr. Bull Smith has told him on several occasions that he does not want a whistleblower or someone like him in his employment and that as a result of that we have our hearing — and that's Defendant’s Exhibit 7 — and the agreement that I would expect to call His Honor as a witness in this case along with Mr. Pitts [the assistant district attorney], if necessary, to show that the agreement was made and it speaks for itself, and, of course, the court order [that] was entered as a result of that speaks for itself but that after that motion was filed by me to have the case dismissed ... that there was a meeting between His Honor and Mr. Bull Smith in which Mr. Bull Smith convinced the Court that this case should not be dismissed.
"... We will show that change of the mind took place after a meeting between Mr. Bull Smith and representatives of Mr. Bull Smith with the Court and that this ex parte or outside meeting resulted in the Court informing me that my motion was not well taken, that you had, quote, changed your mind. So, from our standpoint there is no way that this Court and this Judge can sit and hear this case based on facts and evidence as we expect to present them....
"... And we're making this offer most of which is a matter of written records and documents but we would expect to call the Court and call Mr. Bull Smith as witnesses — factual witnesses based on facts and circumstances that happened to show that this case has no basis or no merit but that only that even after there was an agreement that the case would be dismissed that the continuation of the case was only after we had some ex parte communications that resulted in this case being put back on the docket and ... we ... [n]ow tell the Court that we just do not see any way that this Court can sit and hear this case and act as a trial judge at the same time that a Federal civil rights suit is pending on behalf of Mr. Alford against this Court and the district attorney in their official capacities, not individual capacities, but in their official capacities as the district attorney and as the circuit judge before whom this case is assigned and, further for the reasons that the Court would be called upon as a factual witness.”