MURDOCK, Judge.
Walter Carpenter appeals from a judgment of the Mobile Probate Court fining him $250 for contempt of court, setting aside an earlier judgment that had awarded him $9,362 as a reimbursement for the payment of funeral and other expenses for Gladys Marie Zirlott, deceased, and entering a new judgment in the amount of $7,112 on his reimbursement claim.
Gladys Marie Zirlott died on October 16, 1999. She was survived by (i) her daughter, Shirley Carpenter, who was married to Carpenter (the Carpenters are residents of the State of Texas), (ii) one or more children of her deceased son, Gerald Slay, and (iii) at least one sibling, a brother, John D. Locke. Jordan Slay was a child of *1004 Gerald Slay; she was a minor at the time of the proceedings below. It was also alleged that Gerald Slay had another child, Carol Lynn Slay, but there is no indication in the record as to her age or whereabouts at the time of the proceedings below. Guardians ad litem were appointed to represent the interests of Jordan Slay and Carol Lynn Slay in Zirlott’s estate.
Approximately seven months after Zir-lott’s death, letters of administration on Zirlott’s estate were granted to Anna Belle Newman, who was the general administrator of Mobile County.[1] Thereafter, Carpenter filed a motion requesting that Zir-lott’s estate reimburse him for Zirlott’s funeral expenses and for other expenses as follows:
Pine Crest Funeral Home $7,852
Bond for Administratrix $ 100
Retainer for Estate’s Attorney $1,000
Caretaker for Zirlott’s home $ 410
Total $9,362
The $7,852 payment to Pine Crest Funeral Home included various expenses for Zir-lott’s funeral service and burial and included $2,250 for the purchase of a casket. Following a hearing on Carpenter’s motion, the trial court entered a judgment on April 6, 2001, granting Carpenter’s reimbursement claim in the amount of $9,362.
On June 11, 2001, John W. Cowling, the guardian ad litem for Jordan Slay, filed a Rule 60(b), Ala. R. Civ. P., motion alleging that, during the hearing on Carpenter’s reimbursement claim, Carpenter had misrepresented whether he had received assistance in paying the expenses for which he was seeking reimbursement. Specifically, Cowling alleged that Zirlott, at the time of her death, had $4,351 on deposit in a joint bank account with her brother, John D. Locke, and that Locke had recently informed Cowling of the existence of the joint account. Cowling also alleged that Locke had considered the account funds to have belonged to Zirlott, that Locke had closed the account after Zirlott’s death, and that he had given the proceeds of the account to the Carpenters to assist with Zirlott’s funeral expenses. Cowling requested that the trial court set aside its April 6, 2001, judgment based upon the “new evidence” of Carpenter’s alleged “fraud upon the court” and that it set a hearing to determine whether Carpenter should be reimbursed for any of his claimed expenses.
The trial court held a hearing on Cowling’s Rule 60(b) motion on October 11, 2001, and received ore tenus evidence. Newman testified at the October 2001 hearing that Locke told her that he had given the proceeds of the joint bank account to the Carpenters to assist with the funeral expenses. Further, Carpenter admitted that Locke had given either him or his wife the bank account proceeds several months after Zirlott’s funeral.[2]
On October 26, 2001, the trial court entered a judgment that stated, in pertinent part:
“3. At the April 4, 2001 hearing John W. Cowling ... asked Carpenter questions concerning what assets [Zirlott] had at the time of her death. Specifical *1005 ly, Cowling inquired as to whether [Zir-lott] had any bank accounts.
“4. Carpenter responded negatively.
“5. It is now undisputed that [Zir-lott] had a bank account with her brother, John Locke, as a co-party. Carpenter knew of this account at the time of the April 4th hearing and he did not disclose it upon questioning.[3] More importantly, Carpenter did not disclose that Mr. Locke had paid over $4,300 from said bank account to Carpenter’s wife, because Mrs. Carpenter was believed to be [Zirlott’s] closest living relative at the time of her death.
“6. Upon review of the transcript of the April 4th hearing the Court was reminded of how uncooperative and contrary Carpenter was during his testimony. The same could be said of his testimony on October 11th.
“7. The nature of the proceeds in [Zirlott’s] bank account has not been established. No testimony or argument has been presented as to whether the funds in said bank account belonged to Mr. Locke following [Zirlott’s] death. The Court has not, and does not in this Order, consider or make a determination on said issue.
[[Image here]]
“9. Upon close review of the transcript of [the April 4] hearing and comparison of said testimony contained in the transcript of the October 11th hearing, the Court is of the opinion and therefore concludes that Carpenter knowingly offered false and misleading testimony to the Court in regard to [Zir-lott’s] bank account and should be held in contempt of Court for the same.”
The trial court fined Carpenter $250 as a sanction for his alleged contempt.
The trial court also made the following findings regarding its April 6, 2001, judgment, in which it had awarded Carpenter his expense-reimbursement claim:
“12. Cowling also requested that the Court reconsider its [April 6, 2001, judgment] in regard to the funeral expenses alleged to have been incurred by Carpenter, for which he seeks reimbursement.'
“13. It is obvious that the Carpenters were not familiar with [Zirlott’s] financial affairs. Carpenter testified that he did not consult with Mr. Locke ... until following [her] funeral.
“14. It is undisputed that [Zirlott] had a casket insurance policy that would have covered the expense of the casket used to bury [her].
“15. Carpenter has offered no explanation for why the Carpenters did not make at least a cursory inquiry regarding [Zirlott’s] financial affairs before making the funeral arrangements. Carpenter’s testimony suggests callous disregard of the interests of [Zirlott’s] other heirs, because the Carpenters assumed that all of [Zirlott’s] assets belonged to Mrs. Carpenter, since she was the sole surviving child of [Zirlott],
“16. Carpenter has offered no explanation for why the Carpenters did not make a claim on the casket policy during the applicable claim time period or take appropriate action to enable the wife of [Zirlott’s] deceased son [to] take action to recover the proceeds of said policy.
*1006 “17. The Court is of the opinion, and therefore concludes, that it is appropriate for the Court to reconsider its [April 6, 2001, judgment] in regard to the al-lowability of the Carpenter’s claim for reimbursement of [Zirlott’s] funeral expenses.
“18. The Court is of the opinion, and therefore concludes, that Carpenter should not be reimbursed for the expenses relating to the casket used to bury [Zirlott],
“19. The evidence presented to the Court indicates that the expense of the casket was $2,250.
“20. The Court is of the opinion, and therefore concludes, that Carpenter is due to be reimbursed for [Zirlott’s] funeral expenses and other expenses, in the total sum of [$7,112].”
Carpenter appealed to the Alabama Supreme Court; that court transferred the appeal to this court, pursuant to Ala.Code 1975, § 12-2-7.
Carpenter argues that there was insufficient evidence for the trial court to hold him in contempt and that the trial court failed to follow the appropriate procedures under Rule 70A, Ala. R. Civ. P., before holding him in contempt. Carpenter also argues that the trial court erred when it granted Cowling’s Rule 60(b) motion.
In regard to Carpenter’s argument that there was insufficient evidence for the trial court to hold him in contempt, “whether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an abuse of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.” Stack v. Stack, 646 So.2d 51, 56 (Ala.Civ.App.1994). The trial court did not specify whether it determined that Carpenter was in “direct contempt” or “constructive contempt”; however, based upon the language of the trial court’s judgment and the procedural history of this case, it appears that the trial court determined that Carpenter was in “direct contempt.” [4]
“ ‘Direct contempt’ means disorderly or insolent behavior or other misconduct committed in open court, in the presence of the judge, that disturbs the court’s business, where all of the essential elements of the misconduct occur in the presence of the court and are actually observed by the court, and where immediate action is essential to prevent diminution of the court’s dignity and authority before the public.”
Rule 70A(a)(2)(A), Ala. R. Civ. P. Direct contempt includes the giving of false testimony. Ex parte Tarpley, 293 Ala. 137, 141, 300 So.2d 409, 413 (1974).
We have carefully reviewed the record, and we cannot conclude that the trial court erred when it determined that Carpenter “knowingly offered false and misleading testimony to the Court in regard to [Zirlott’s] bank account,” particularly in light of his evasive testimony regarding Locke’s payment to his wife. See note 2, supra. Accordingly, we must determine whether the trial court failed to follow the appropriate procedures for holding Carpenter in direct contempt.
Rule 70A(b), Ala. R. Civ. P., states:
*1007 “(1) Finding. The court may summarily find in contempt any person who commits a direct contempt, immediately notifying the person of its finding. The judge shall cause to be prepared a written order reciting the grounds for the finding, including a statement that the judge observed the conduct constituting the contempt. The order shall be signed by the judge and entered of record.
“(2) Mitigation. The court shall apprise the person of the specific conduct on which the finding is based and give that person a reasonable opportunity to present evidence or argument regarding excusing or mitigating circumstances. No decision concerning the punishment to be imposed shall be made during the course of the proceeding out of which the contempt arises, unless prompt punishment is imperative to achieve immediate vindication of the court’s dignity and authority.
“(3) Sentence. Unless it is pronounced immediately under subsections (1) and (2) above, sentence shall be pronounced in open court, in the presence of the contemnor, within seven (7) days after the completion of the proceeding out of which the contempt arose.”
Our review of the record indicates that Carpenter had no notice that the trial court was considering holding him in contempt until the entry of the October 26, 2001, judgment, which was approximately two weeks after the hearing on Cowling’s Rule 60(b) motion. Also, after the trial court made its contempt finding, Carpenter was provided with no opportunity “to present evidence or argument regarding excusing or mitigating circumstances.” Further, the trial court did not pronounce Carpenter’s sentence immediately or “in open court, in the presence of the contem-nor, within seven (7) days after the completion of the proceeding out of which the contempt arose.” The trial court’s judgment holding Carpenter in contempt and fining him $250 is due to be reversed. See Ex parte Garmon, 637 So.2d 883, 885 (Ala.1991).
Finally, Carpenter argues that the trial court erred in granting Cowling’s Rule 60(b) motion. The only grounds for relief under Rule 60(b) that are arguably pertinent to this case are “newly discovered evidence which by due diligence could not have been discovered in time to move for a new trial under Rule 59(b),” see Rule 60(b)(2), and fraud upon the court, see Rule 60(b). Carpenter contends, however, that there was no “newly discovered evidence” or any fraud upon the court that would justify relief from the trial court’s April 6, 2001, judgment.
“The granting of a Rule 60(b) motion is an extreme remedy to be used only in extraordinary circumstances. The trial court has broad discretion in determining whether to grant or to deny a Rule 60(b) motion, and we will look to the grounds presented and the matters presented in support of the motion to determine if there was an abuse of that discretion.”
State ex rel. Croson v. Croson, 724 So.2d 36, 38 (Ala.Civ.App.1998) (citations omitted).
Despite the deferential standard by which we review trial court rulings on Rule 60(b) motions, we note that the trial court granted Cowling’s Rule 60(b) motion on the ground that Cowling had not familiarized himself with Zirlott’s financial affairs before he paid the expenses of Zirlott’s funeral, and because Carpenter failed to file a claim on the “casket policy during the applicable claim time period or take appropriate action to enable the wife of [Zirlott’s] deceased son [to] take action to recover the proceeds of said policy.” It was at the April 2001 hearing on Carpenter’s motion for reimbursement of funeral and *1008 other expenses, however, that evidence was offered regarding the existence of the casket policy and Carpenter’s failure to consult with family members regarding Zirlott’s financial affairs before he made Zirlott’s funeral arrangements. Carpenter testified at that hearing that Zirlott had died in her home, but that her body had not been discovered for several days. He stated that he and his wife arrived from Texas only a few hours before Zirlott’s funeral service was scheduled to begin, that no one had made arrangements to pay for Zirlott’s casket or other funeral expenses, and that no one offered to assist with the payment of the funeral expenses at the time he and Mrs. Carpenter made the funeral arrangements. Carpenter testified that he did not know that Zirlott had a casket policy until Locke informed him of the policy after the funeral. No evidence was offered to contradict Carpenter’s testimony in this regard.
Following the receipt of testimony at the April 2001 hearing, the trial court stated, “I’m really concerned why there was no consultation with family or anyone about this casket policy because you could have saved over two thousand dollars.” However, the trial court then stated that it believed that the Carpenters had acted in good faith when they arranged Zirlott’s funeral and that it would award Carpenter’s requested reimbursement. Cowling then objected and stated, “I think given the size of the estate and given it was [Carpenter’s] own inaction that cost at least a couple of thousand dollars to the estate, I don’t think it’s fair for the two children to bear the burden of that expense to the estate.” The trial court replied, “Okay, I appreciate that. My ruling is going to stand and I appreciate you noting that for the record.” The trial court then entered a judgment awarding Carpenter’s reimbursement claim in the amount of $9,362.
The only material evidence introduced at the October 2001 hearing on Cowling’s Rule 60(b) motion that was not introduced at the court’s initial April 6, 2001, hearing pertained to Locke’s payment of funds from the joint bank account to Carpenter. Indeed, the only evidence in the record pertaining to the casket insurance policy was presented at the April 2001 hearing and was considered by the court when it entered the April 6, 2001, judgment. No new evidence was offered at the October 2001 hearing regarding the casket policy. Thus, there was no “newly discovered evidence” as to this issue. Further, there was no evidence of fraud in connection with Carpenter’s failure to file a claim on the casket policy or to provide the policy to Gerald Slay’s wife. Accordingly, we conclude that the trial court erred in granting Cowling’s Rule 60(b) motion based on Carpenter’s failure to learn of, or to file a timely claim for benefits under, Zirlott’s casket policy.[5]
Those portions of the trial court’s judgment holding Carpenter in contempt and fining him $250, and reducing the April 6, 2001, judgment in favor of Carpenter from $9,362 to $7,112, are reversed, and the cause is remanded to the trial court for further proceedings.
REVERSED AND REMANDED.
YATES, P.J., and CRAWLEY and THOMPSON, JJ., concur.
PITTMAN, J., recuses himself.

. It was later discovered that, before her death, Zirlott had executed a will; that will eventually was admitted to probate in October 2001. Although the will is not included in the record on appeal, testimony given by Carpenter indicates that the sole beneficiary named in the will was Zirlott's deceased son, Gerald Slay.

. Carpenter denied, however, that the payment was to reimburse him for funeral expenses, insisting instead that the payment was a gift in recognition that his wife was Zirlott's closest surviving relative.

. Actually, at the April 2001 hearing on his reimbursement claim, Carpenter did disclose the existence of the joint bank account owned by Zirlott and Locke. However, when asked at that hearing whether Locke had accessed the account after Zirlott’s death, Carpenter gave an evasive answer and did not disclose that Locke had accessed the account and had paid the account proceeds to Carpenter’s wife.

. " 'Constructive contempt’ means any crimi-na! or civil contempt other than a direct contempt.” Rule 70A(a)(2)(B), Ala. R. Civ. P. A proceeding for constructive contempt "shall be initiated by the filing of a petition seeking a finding of contempt.” Rule 70A(c)(l), Ala. R. Civ. P. (emphasis added). Cowling did not request that Carpenter be held in contempt as part of his Rule 60(b) motion, and there is no evidence in the record that any party sought a finding that Carpenter was in contempt.

. Some of the language in the October 26, 2001, judgment might be construed as an attempt by the trial court to amend the April 6, 2001, judgment pursuant to Rule 59, Ala. R. Civ. P. However, there was no timely filed Rule 59 motion in this case.