BRYAN, Judge.
Angie Ingram, the attorney of record for the plaintiff in a civil action (“the underly *1177 ing action”) in the small-claims division of the Walker District Court (“the district court”), appeals from a judgment finding her in contempt and sentencing her to 60 days in jail. We reverse and remand with instructions.
Ingram’s office is in Jefferson County, but she represents creditors in collection actions throughout the state. During the last several years, she has represented creditors in a number of collection actions in the district court. In May 2011, the district-court judge who had been presiding in those actions (“the trial judge”) ordered Ingram to appear at a show-cause hearing on May 20, 2011. That show-cause hearing related to actions she was handling in general rather than the underlying action in particular. At that show-cause hearing, the trial judge stated, in pertinent part:
“THE COURT: Over the last two- and-a-half years there’s a lot of times that ya’ll either haven’t had anybody here, or you have local attorneys, for whatever reason, and they don’t know what cases they are here on, they don’t know what’s going on with the cases. And then what I do — well, what I started out doing is continuing those because I figured, well, mistakes happen and somebody got mixed up somewhere. As it continued to happen, I dismissed those cases. If there was a good reason why you missed, I would consider reinstating those cases.
“Now what I’m seeing is, nobody shows up. I have people that take off work, people that hire lawyers, they’re here, and nobody is here on your side. I dismiss them and then I get a slew of motions to reinstate, which is further a waste of my time. You know, I’m ruling on everything two or three times because ya’ll can’t be bothered to come up here, and I’m very unhappy about that, Ms. Ingram.”
Ingram explained that she had arranged for a local attorney to appear on several occasions in the district court but that he had proved unreliable and that she would not be relying on him in the future. Ingram also apologized to the trial judge.
The following colloquy then occurred:
“THE COURT: Well, I’m not necessarily—
“MS. INGRAM: And it’s not—
“THE COURT: — casting stones at anybody. And I didn’t bring you over here to throw you in jail or anything like that. I don’t think that’s appropriate. I just want you and I to be on the same page on this.
“MS. INGRAM: I understand.
“THE COURT: If this continues to happen, here’s where I am at. I want you to know so there’s no misunderstanding.
“Particularly, in cases where I have other attorneys that are here and there’s nobody here from your office, I’m going to entertain motions for attorney’s fees on those cases. I’m going to start fining you if I feel like somebody has come here. A lot of these people can ill-afford to miss a day of work anyway. And if they take off work and come up here and there’s nobody up here to prosecute that case, there’s going to be some punitive damages — ”
The transcript of the May 20, 2011, show-cause hearing does not indicate that the trial judge either found Ingram to be in contempt or ordered her not to file a motion to reinstate an action if the action had been dismissed due to her failure to appear at a hearing or docket call. Moreover, the record before us does not contain a written order either finding Ingram in contempt based on acts or omissions that *1178 had occurred on or before May 20, 2011, or ordering her not to file a motion to reinstate an action if the action had been dismissed due to her failure to appear at a hearing or docket call.
Subsequent to the May 20, 2011, show-cause hearing, the trial judge set the underlying action on his January 12, 2012, trial docket. On December 23, 2011, Ingram filed an application for the entry of a default against the defendant in the underlying action for failure to answer or otherwise defend, a motion for a default judgment against the defendant, and a supporting affidavit establishing the amount the defendant owed the plaintiff. Ingram did not appear at the trial judge’s January 12, 2012, trial docket; at a show-cause hearing on March 21, 2012, she testified that she had not appeared at the January 12, 2012, trial docket because she believed the underlying action would be disposed of by the trial judge’s granting the motion for a default judgment she had filed on December 23, 2011. On January 23, 2012, the trial judge entered a judgment dismissing the underlying action. That judgment stated: “Neither party appeared in court. Case dismissed for lack of prosecution.”
On January 27, 2012, Ingram filed a motion to reinstate the underlying action on the ground that the application for a default, motion for a default judgment, and supporting affidavit had been filed before the January 12, 2012, trial docket. On February 17, 2012, the trial judge entered an order stating:
“Motion to reinstate filed by [the plaintiff in the underlying action] is hereby set for hearing on March 5, 2012 at 9:00 a.m. The hearing will be held on the issues of reinstatement and also to give plaintiffs counsel an opportunity to show cause why she should not be held in contempt for repeated failure to appear in this court.”
Ingram neither appeared at the March 5, 2012, hearing nor gave the trial judge advance notice that she would not be appearing at that hearing. At the March 21, 2012, show-cause hearing, Ingram testified that she had had matters in four actions in the Jefferson District Court and the Jefferson Circuit Court scheduled for the morning of March 5, 2012, and that she had appeared in those actions that morning. She further testified as follows:
“Q. [By Ingram’s attorney:] Okay. But you are not here to tell the [trial] judge that you didn’t appear in his court [on March 5, 2012,] specifically because you appeared in those cases [in Jefferson County], are you?
“A. No.
“Q. It just happens to be a fact that you had four other eases in another county that you handled that day?
“A. Yes.
“Q. When you saw notice of the show cause hearing on March 5th that was entered by [the trial judge], what was your reaction?
“A. I mean, I saw that he set the motion to reinstate. I already believed that it would just be denied, you know. I just have been at a loss as to figure out what it is that I am not doing in your courtroom, Your Honor. I don’t have this problem anywhere in the rest of the state but here. And I have no idea how to fix it. And I am still sitting here listening today, and I still don’t know how to fix it. I do everything within my power to manage my office, my dockets, and I don’t know what else to do.
“THE COURT: Can I ask what conflict provisions that you took, what steps that you took to notify me that you had other cases set?
*1179 “MS. INGRAM: I didn’t. I just — I just shut down. I just didn’t know what else to do. I mean, I have been here. I have tried to do — and I have been respectful to you. The times that I have been here, I have never had a cross word with you.
“THE COURT: We don’t have any problems when you show up. We never have.
“MS. INGRAM: No. I just don’t know how it is, how I have gotten on the wrong side here, and I don’t know. I still don’t know how to fix it, other than just come every month.
“Q. [By Ingram’s attorney:] Okay. So when you saw that that had been set that day, I mean, what you are indicating to me it sounds like is that you felt an overwhelming feeling of sort of helplessness and hopelessness of that situation?
“A. Yes.
“Q. And instead of sort of facing that situation head-on, you kind of turned away from a situation where you felt helpless and hopeless; is that right?
“A. Yes.”
On March 6, 2012, the trial judge issued a writ of attachment that stated:
“It appearing to this Court that Angie Hubbard Ingram, attorney for the Plaintiff, was duly ordered to appear before the Court for a Small Claims Docket on the 5th day of March, 2012, and said Attorney has failed and refused to appear for Court on the 5th day of March, 2012, and it appearing to this Court that the said attorney stands in contempt of this Court, you are therefore Commanded to arrest the said Angie Hubbard Ingram, Instanter, and bring her before this Court to testify in this case and show cause to this Court why she should not be held in Contempt of Court.
“The subject is to be brought before the Court upon her arrest and incarceration in the Walker County Jail.
“It is the FURTHER ORDER OF THE COURT, that the Sheriff shall notify the Court immediately upon apprehension and detention of the subject.
“DONE and ORDERED, this the 6th day of March, 2012.
“BOND AMOUNT: NONE”
(Capitalization in original.)
Also on March 6, 2012, the trial judge had the Walker County Sheriffs Office send a deputy sheriff to Jefferson County to arrest Ingram. At the March 21, 2012, show-cause hearing, the Walker County deputy sheriff testified as follows. He met a Jefferson County deputy sheriff on the afternoon of March 6, 2012, and the two deputies went to Ingram’s office. When the deputies arrived at Ingram’s office on the second floor of a building, the receptionist told the deputies that Ingram was in the yogurt shop downstairs. When the deputies went to the yogurt shop, Ingram was not there, and the deputies asked an employee of the yogurt shop where Ingram was. The yogurt-shop employee telephoned an unidentified person. Upon concluding his telephone call, the yogurt-shop employee told the deputies that Ingram would come down to the yogurt shop in a few minutes. The deputies waited, but Ingram did not appear. The deputies asked the yogurt-shop employee if Ingram was coming down, and the yogurt-shop employee made a telephone call to an unidentified person but told the deputies he did not get an answer. The yogurt-shop employee later made another call to an unidentified person and reported to the deputies that Ingram would not be able to meet with them because she was meeting with a client. The deputies then went back upstairs to Ingram’s office and told the receptionist that the yogurt-shop em *1180 ployee had told them that Ingram was in her office. The receptionist told the deputies that Ingram had left the office for a meeting. The deputies asked to search Ingram’s office to verify that she was not there, and the receptionist allowed them to do so. The deputies did not find Ingram in her office. The deputies then left the building but stopped in the parking lot to have a conversation before getting into their automobiles. While the deputies were conversing in the parking lot, a man who identified himself as Ingram’s husband approached them and asked the deputies if they were looking for Ingram. When they responded in the affirmative, the man either said that Ingram knew the deputies were coming or that she knew the deputies were looking for her,[1] that she was not at her office, and that the deputies would not be able to contact her. The Walker County deputy then called the trial judgé, who told the deputy to tell the man who had identified himself as Ingram’s husband that, if Ingram would come with the deputy, she could get out of jail but, if she did not come with the deputy, the trial judge was going to be gone for a few days and the trial judge did not know when Ingram would get out of jail. The deputy relayed to the man who had identified himself as Ingram’s husband what the trial judge had said. The man who had identified himself as Ingram’s husband then walked off, and the deputies left.
At the March 21, 2012, show-cause hearing, Ingram testified that she had left her office for a meeting before the deputies arrived at her office on March 6, 2012, and that her staff did not know she had left the office. She introduced footage from a security camera at her office corroborating her testimony that she had left her office before the deputies arrived. There was also evidence tending to prove that Ingram did not learn that the deputies had come to her office until after they had left.
Ingram further testified as follows. On March 6, 2012, upon learning that the deputies had come to her office, she called the trial judge’s office; however, the trial judge refused to talk to her, and his secretary relayed a message to her from the trial judge that she should turn herself in at the jail. (The trial judge acknowledged on the record that Ingram had called his office on the afternoon of March 6, 2012, and that he had refused to talk to her.) Ingram then asked a Walker County attorney (“the first Walker County attorney”) to call the .trial judge on her behalf. The first Walker County attorney called the trial judge and thereafter relayed a message to her from the trial judge that she should turn herself in at the jail. Ingram then called a Jefferson County attorney (“the first Jefferson County attorney”) to ask for advice. The first Jefferson County attorney told her that he would contact the trial judge the next day and arrange for them to appear before the trial judge. The first Jefferson County attorney called the trial judge on March 7, 2012.
The first Jefferson County attorney was out of town when this matter was heard on March 21, 2012, and the trial judge refused to admit an affidavit signed by the first Jefferson County attorney. At the March 21, 2012, hearing, the trial judge stated, in pertinent part:
“THE COURT: There is some incorrect statements in that [affidavit] from [the first Jefferson County attorney]. / didn’t tell him that I would get to it next *1181 week. My advice to him was that he was representing someone who was in open violation of a Court order, and I asked him if it was his practice to advise his clients to continue to stay in violation of a Court order. And I told him that if he wanted to help his client, he needed to tell her to turn herself in.... ”
(Emphasis added.)
Ingram testified as follows at the March 21, 2012, show-cause hearing:
“Q. [By Ingram’s attorney:] But— well, okay. Let me ask you this question, Angie. Did you speak with [the first Jefferson County attorney] after he spoke with [the trial judge]?
“A. Yes, he called me.
“Q. Okay. And what did he tell you the context of that conversation was?
“A. That [the trial judge] was still insistent that I check myself into the jail.
“Q. Okay.
“A. And that [the trial judge] would deal with me when he got back from his trip.”
(Emphasis added.) Ingram further testified as follows at the March 21, 2012, show-cause hearing. On the advice of the first Jefferson County attorney, she did not turn herself into the jail on March 7, 2012, because she would have had to remain in jail until the trial judge returned from his trip sometime the following week. On March 8, 2012, the first Jefferson County attorney contacted another Walker County attorney (“the second Walker County attorney”) and asked him to contact the trial judge on Ingram’s behalf. The second Walker County attorney said that the trial judge had gone out of town and that he would call the trial judge when he returned on March 14, 2012. On March 8, 2012, the Jefferson County sheriffs office informed Ingram that, after consulting with the Jefferson County District Attorney’s Office, the Jefferson County Sheriffs Office was not going to execute the writ of attachment. Also on March 8, 2012, a Jefferson County district judge called Ingram and told her that he had received an e-mail the trial judge had sent to all the circuit and district judges in the state and that the e-mail stated that Ingram was a fugitive from justice.
On March 9, 2012, the trial judge entered the following order:
“This cause having been set for Hearing on the 5th day of March, 2012, upon Plaintiffs attorney, Angie H. Ingram’s Motion to Reinstate, filed January 27, 2012; said Hearing to be on the issues of reinstatement and also to give Plaintiffs counsel an opportunity to show cause why she should not be held in contempt for repeated failure and refusal to appear in court and for the repeated motions for reinstatement;[2] and said attorney, having failed to appear in court;
“It is therefore the Order, Judgment and Decree of this Court that the Plaintiffs attorney, Angie H. Ingram, is found to be in Contempt of Court for failure to comply with the Court’s Order.
“It is further ordered that Plaintiffs attorney, Angie H. Ingram, report to the Walker County Jail immediately to await Hearing on said contempt charges.”
(Emphasis added.)
At the March 21, 2012, show-cause hearing, Ingram testified as follows. Sometime before March 14, 2012, she learned *1182 that the trial judge had told someone that she was now facing 25 days in jail. On March 14, 2012, the second Walker County attorney called and relayed the message that the trial judge still wanted her to turn herself in at the jail. She then called another Jefferson County attorney (“the second Jefferson County attorney”) who advised her that they should go to the trial judge’s courtroom the next day without making any further calls to the trial judge’s office. The next day, March 15, 2012, she and the second Jefferson County attorney went to the trial judge’s courtroom.
After Ingram and the second Jefferson County attorney talked to the trial judge on March 15, 2012, the trial judge, that same day, entered the following order:
“This matter is set for a show cause hearing on Wednesday March 21, at 9:00 A.M. in Courtroom ‘C’ of the Walker County Courthouse. Plaintiffs counsel, Angie Ingram, is ordered to appear and show cause why she should not be held in contempt for repeated and continuous defiance of this Court’s orders to wit:
“1. Repeated and continuous failure to appear for scheduled hearings before this Court.
“2. Repeated filing of frivolous ‘motions to reinstate’ in cases which this Court has previously dismissed for the failure of Plaintiffs counsel to appear.[3] This Court specifically instructed counsel that such filings would be considered an act of contempt at an earlier ‘show cause’ hearing held on May 20,2011.[4]
“3. Failure to appear for a ‘show cause’ hearing on March 5, 2012 at 9:00 A.M. before this Court.
“4. Providing false information to an officer of the Court (a Walker County deputy) or causing false information to be provided via counsel’s staff when that officer showed up to execute a valid writ of attachment for failure to appear at the aforementioned March 5, 2012 hearing.
“5. Repeated failure to follow the Court’s verbal orders to appear and answer to these charges, choosing instead to have various attorneys contact the Court on her behalf. Mrs. Ingram, a practicing attorney in Alabama, openly ignored the Court’s orders and became a fugitive from justice after becoming aware of a valid writ of attachment issued by this Court on March 6, 2012. Her open defiance continued until March 15, 2012.
“Plaintiffs counsel will be given an opportunity to respond and provide evidence to answer each of these alleged acts of contempt. Each act of contempt is punishable by a maximum of five (5) days in the Walker County Jail.”
Ingram, the second Jefferson County attorney, and a third Jefferson County attorney appeared at the March 21, 2012, show-cause hearing. At the commencement of the hearing, Ingram made an oral motion asking the trial judge to disqualify himself pursuant to Rule 70A(f), Ala. R. Civ. P., on the ground that the trial judge’s own conduct was so related to the alleged contemptuous conduct that the trial judge *1183 may have contributed to or may have been otherwise involved in the contemptuous conduct. The trial judge denied that motion and proceeded to receive evidence ore tenus. At the conclusion of the hearing, the trial judge stated:
“THE COURT: All right. I want to go over these grounds. As to the charge of repeating [sic] and continuous failure to appear for scheduled hearings before this Court, I find no contempt on that charge. As to the repeated filing of frivolous motions to reinstate in eases in which this Court has previously dismissed for the failure of plaintiffs counsel to appear, an act that I specifically instructed Ms. Ingram about earlier,[5] I find her in contempt, and I sentence her to five days in the Walker County Jail. On the charge of failure to appear for a show cause hearing on March 5th, 2012 at 9:00 a.m., it is undisputed that she failed to appear, I find her in contempt on that, and I sentence her to five days in the Walker County Jail. On the charge of providing false information to an officer of the court, or causing false information to be provided via counsel staff, and recognizing that in Alabama the rules of professional responsibility make us responsible, as attorneys, for our staffs actions, I find Ms. Ingram in contempt, and I sentence her to five days in the Walker County Jail. On the charge of repeated failure to follow the Court’s verbal orders to appear and answer to these charges, choosing instead to have various attorneys contact the Court on her behalf, I find Ms. Ingram guilty of contempt on that for a period of time from March 6th until March 15th, nine days, each day is a continuing act of contempt, and I sentence you to 45 days in the Walker County Jail for that period of nine days of open defiance.... ”
The trial judge did not render a written order memorializing the oral announcement of his judgment finding Ingram in contempt at the conclusion of the March 21, 2012, show-cause hearing. Ingram appealed to this court on April 4, 2012. Because Rule 58(a), Ala. R. Civ. P., does not allow for the oral rendition of a judgment, we remanded the cause to the district court for the rendition and entry of a written judgment of contempt.
On September 24, 2012, the trial judge electronically rendered and electronically entered the following written judgment:
“This matter came before the Court on March 21, 2012, on a ‘show cause’ hearing for Plaintiffs counsel to show why she should not be held in contempt for violating the Court’s prior orders. Testimony was given, ore tenus, and evidence was presented to the Court. After hearing the testimony, observing the credibility and demeanor of the witnesses and examining the evidence, the Court finds as follows:
“1. The Court finds that Counsel has repeatedly filed frivolous ‘motions to reinstate’ in cases for which she neglected to appear "without reasonable excuse or explanation.[6] The Court finds that said filings violate the Court’s earlier specific instruction for Counsel to refrain from such action[7] The Court finds counsel in Contempt and sentences her to five days (5) in the Walker County Jail.
*1184 “2. The Court finds that counsel willfully and intentionally failed to appear for a ‘show cause’ hearing set on March 5, 2012 at 9:00 a.m. The Court finds counsel in contempt and sentences her to five (5) days in the Walker County jail.
“3. The Court finds that counsel willfully and intentionally provided false information or caused false information to be provided via her staff to an officer of the Court (a Walker County Deputy). The Court finds counsel in contempt and sentences her to five (5) days in the Walker County Jail.
“4. The Court finds that counsel failed to respond to a lawful writ of attachment requiring her to turn herself in to the Walker County Jail. Counsel defied the Court’s order to turn herself in and continued to defy the Court’s order for a period of time that extended from March 6, 2012 until March 15, 2012. The Court finds each day that counsel defied the Court’s order to be a separate act of contempt for a total of nine (9) separate acts of contempt. For each act of contempt, the Court sentences counsel to five (5) days in the Walker County Jail for a total of forty-five (45) days.”
Ingram’s notice of appeal became effective on September 24, 2012, the day the trial judge entered the written judgment. See Rule 4(a)(4), Ala. R.App. P. (“A notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after the entry and on the day thereof.”).
As a threshold matter, we must determine whether we have jurisdiction over this appeal. In pertinent part, § 12-12-71, Ala.Code 1975, provides that, “[e]x-cept as provided in Section 12-12-72 ..., all appeals from final judgments of the district court shall be to the circuit court for trial de novo.” Section 12-12-72(1), Ala.Code 1975, provides that appeals from final judgments of the district court “shall be directly to the appropriate appellate court if: (1) An adequate record or stipulation of facts is available and the right to a jury trial is waived by all parties entitled thereto.” Thus, this court has jurisdiction over Ingram’s appeal if there is an adequate record and Ingram either has no right to a jury trial or, if she is has a right to a jury trial, she has waived that right. The record on appeal contains a transcript of the May 20, 2011, show-cause hearing, the relevant portions of the clerk’s record, the transcript of the March 21, 2012, show-cause hearing, the exhibits that were introduced at the March 21, 2012, show-cause hearing, and the exhibit that was offered but rejected at the March 21, 2012, show-cause hearing. Therefore, we conclude that the record is adequate for appellate review of the contempt judgment.
We must now determine whether Ingram is entitled to a jury trial and, if so, whether she has waived it. The trial judge found Ingram guilty of criminal contempt rather than civil contempt. Charles Mfg. Co. v. United Furniture Workers, 361 So.2d 1033, 1035 (Ala.1978) (“Civil contempt sanctions seek to compel or coerce compliance with orders of the court in the future, while a criminal contempt is one in which the purpose of the proceeding is to impose punishment for disobedience of orders of the court.”). The maximum sentence for criminal contempt in Alabama is 5 days in jail and a $100 fine. See § 12-11-30(5), Ala.Code 1975 (“The circuit court may punish contempts by fines not exceeding one hundred dollars ($100) and by imprisonment not exceeding five days.”); Ex parte Ivey, 698 So.2d 187, 188 (Ala.1997) (“The maximum sentence the circuit court can impose for criminal contempt is *1185 5 days in jail and a $100 fine.”); and § 12-12-6, Ala. Code 1975 (“In all matters before the district court, the district court shall have and possess power to punish for con-tempts as heretofore or hereafter granted to the circuit court by law, in Section 12-11-30 or otherwise, and by the common law of this state”.). In Ivey, 698 So.2d at 188, the supreme court explained why criminal contempt in Alabama is merely an “offense” and a “violation” rather than a “crime”:
“[U]nder the Alabama Criminal Code, [criminal] contempt is only an ‘offense,’ § 13A-1-2Q), [AJa.Code 1975,] not a ‘crime,’ § 13A-1~2(5)[, Ala.Code 1975], The maximum sentence the circuit court can impose for criminal contempt is 5 days in jail and a $100 fíne. Ala.Code 1975, § 12-11-30(5). An offense that may be punished only for 30 or fewer days in jail is a ‘violation,’ § 13A-l-2(2). Only misdemeanors and felonies (not violations) are crimes. § 13A-l-2(5). Therefore, under our statutes, criminal contempt is a violation, and is merely an offense, not a crime.”
The supreme court has implied that an alleged contemnor does not have a right to a jury trial in a contempt proceeding in Alabama. See Ex parte Evett, 264 Ala. 675, 678-79, 89 So.2d 88, 90-91 (1956). In Evett, 264 Ala. at 678-79, 89 So.2d at 90-91, the supreme court stated:
“Article I, § 6 of the Constitution guarantees a jury trial in all prosecutions by indictment, but the Constitution does not invest the Supreme Court with original jurisdiction in criminal actions. The statutes do not invest the Court of Appeals with original jurisdiction in criminal actions, nor do Probate Courts or Courts of County Commissioners have any criminal jurisdiction whatsoever, yet all have power to punish for contempt. It would be anomalous indeed to hold that a criminal contempt committed against either of those courts should be tried under the criminal code; and even so, to hold that the accused was entitled to a trial by jury. And it would be equally anomalous to hold that the law gives a contemnor of the Circuit Court a right of trial by jury and at the same time, deny it to alleged contemnors of the Appellate or Probate Courts. Clearly, contempt proceedings are not criminal cases within the meaning of the Constitution or statutes of Alabama.”
Subsequent to Evett, the United States Supreme Court held in Bloom v. Illinois, 391 U.S. 194, 88 S.Ct. 1477, 20 L.Ed.2d 522 (1968), that the right of trial by jury applies to “serious” criminal contempts that could result in severe punishment; however, in the context of determining whether the Double Jeopardy Clause applies to criminal contempts, the Alabama Supreme Court held in Ivey that a criminal contempt in Alabama is not the sort of “serious” criminal contempt the United States Supreme Court was referring to in Bloom. 698 So.2d at 188-89. Accordingly, we conclude that Ingram does not have a right to trial by jury.
Moreover, even if she does have a right to trial by jury, she has waived it. In pertinent part, § 12-12-71 provides that a party appealing from a judgment of a district court “shall not be entitled to a jury trial in circuit court unless it is demanded in the notice of appeal....” Ingram did not demand a jury trial in her notice of appeal. Consequently, if she does have a right to a jury trial, she has waived it by omitting a demand for a jury trial from her notice of appeal.
Accordingly, because the record is adequate for appellate review and Ingram either does not have a right to a jury trial or, if she does have a right to a jury trial, she has waived it, we conclude that we *1186 have jurisdiction over Ingram’s appeal pursuant to §§ 12-12-71 and -72.
Ingram first argues that the trial judge erred in denying her motion for the trial judge to disqualify himself pursuant to Rule 70A(f) because, she says, the trial judge’s own conduct was so related to the alleged contemptuous conduct that the trial judge may have contributed to or may have been otherwise involved in the contemptuous conduct. In pertinent part, Rule 70A(f) provides that “if the judge’s own conduct is so related to the alleged contumacious conduct that the judge may have contributed to or may have been otherwise involved in it, then ... the contempt proceeding shall be referred to another judge.... ” (Emphasis added.)
There is a disputed issue of fact in this contempt proceeding that makes the trial judge a potential witness. On March 6, 2012, the trial judge found Ingram guilty of only one act of criminal contempt, i.e., her disobeying his order to appear at the March 5, 2012, show-cause hearing. That was a finding of criminal contempt rather than civil contempt because the trial judge was attempting to punish Ingram for disobeying his order to appear at the March 5, 2012, hearing rather than to coerce or compel her to appear at the March 5, 2012, hearing — obviously, when the trial judge found her in contempt on March 6, 2012, for failing to appear at the March 5, 2012, hearing, Ingram could not travel back in time and appear at the March 5, 2012, hearing in order to purge herself of the contempt. See Charles Mfg. Co., supra. Thus, between March 6, 2012, and March 21, 2012, the date the trial judge found Ingram in contempt for additional acts, the maximum sentence the trial judge could have imposed on Ingram was 5 days in jail and a $100 fine. See §§ 12-12-6 and 12-11-30(5).
There is evidence tending to prove that the trial judge ordered Ingram to report to jail on March 6, 2012, and to remain there until he returned from his trip and held a hearing, which would have resulted in Ingram’s being in jail for more than the 5-day maximum sentence for a single act of criminal contempt.[8] For example, the Walker County deputy sheriff testified that the trial judge told him to tell the man who had identified himself as Ingram’s husband that the trial judge was going out of town and that the trial judge did not know when Ingram would get out of jail if she did not return to Walker County with the deputy. Ingram testified that the first Jefferson County attorney told her on March 7, 2012, that the trial judge had told the first Jefferson County attorney that Ingram had to report to jail and that the trial judge would deal with her when he returned from his trip. The trial judge’s written March 9, 2012, order directed Ingram to “report to the Walker County Jail immediately to await Hearing on said contempt charges” despite the fact that the trial judge had either already left town or was in the process of doing so. On the other hand, at the March 21, 2012, show-cause hearing the trial judge denied telling the first Jefferson County attorney on March 7, 2012, that the trial judge would deal with Ingram when he returned from his trip. Thus, there is a factual issue that makes the trial judge a potential witness in this contempt proceeding. Accordingly, *1187 we conclude that the trial judge erred in denying Ingram’s motion asking the trial judge to disqualify himself pursuant to Rule 70A(f). See Ex parte Segrest, 718 So.2d 1, 7 (Ala.1998) (“[O]ur careful review of the materials before us indicates that the trial judge was involved in the sequence of events that led to the discord below and that he will probably be a witness regarding his out-of-court communications with [the attorney the trial judge had found in contempt]. Thus, referral under Rule 70A(f) is proper.”). Therefore, we reverse the contempt judgment entered by the trial judge and remand the cause with instructions for the presiding circuit-court judge to transfer the contempt proceeding against Ingram to another judge in accordance with Rule 70A(f) and Rule 13, Ala. R. Jud. Admin. See Ex parte Jim Walter Homes, Inc., 776 So.2d 76 (Ala.2000); and C.D.S. v. K.S.S., 978 So.2d 782, 788-91 (Ala.Civ.App.2007). Because we have disposed of the appeal based on Ingram’s first argument, we do not reach her other arguments.
REVERSED AND REMANDED WITH INSTRUCTIONS.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. The record contains no information explaining how Ingram could have known before the deputies came to her office on March 6, 2012, that a writ of attachment had been issued on March 6, 2012, or drat a Walker County deputy sheriff had been sent to her office to execute the writ on March 6, 2012.

. The February 17, 2012, order setting the hearing on March 5, 2012, made no mention of "repeated motions for reinstatement.”

. As noted supra in note 2, the February 17, 2012, order setting the March 5, 2012, show-cause hearing made no mention of repeated motions to reinstate.

. As noted previously, the transcript of the May 20, 2011, show-cause hearing contains no indication that the trial judge ordered Ingram not to file motions to reinstate actions that had been dismissed due to her failure to appear at a hearing or docket call. Moreover, the record contains no other order ordering Ingram not to file motions to reinstate actions that had been dismissed due to her failure to appear at a hearing or docket call.

. See supra note 4.

. The transcript of the March 21, 2012, show-cause hearing contains no evidence indicating that Ingram had filed any motions to reinstate between the May 20, 2011, show-cause hearing and the March 21, 2012, show-cause hearing other than the motion to reinstate she filed in the underlying action on January 27, 2012.

.See supra note 4.

. Because we conclude that the contempt judgment in this case must be reversed because the trial judge erred in denying Ingram's motion asking the trial judge to disqualify himself pursuant to Rule 70A(f), we do not reach the issue whether, because the trial judge found Ingram in criminal contempt rather than civil contempt on March 6, 2012, his failure to specify a definite period of confinement ipso facto rendered his ordering Ingram to report to jail erroneous.