BRYAN, Judge.
Rebecca Wright Dreading (“Rebecca”) appeals from a judgment of the St. Clair Circuit Court (“the trial court”) that found her guilty of criminal contempt and sentenced her to five days in jail, with three days suspended.
The record on appeal reveals that the contempt judgment appealed by Rebecca arose out of a custody action between Rebecca and James Daniel Dreading (“James”). The record before this court does not reveal how that action originated. However, for purposes of this appeal, only the following procedural history is relevant. A motion hearing took place on February 7, 2011, and, on that date, Rebecca committed certain acts, set forth in detail infra, that led the trial court to find Rebecca guilty of contempt after a hearing on February 10, 2011. The case-action summary contains a handwritten entry on February 10, 2011, that states: “Contempt hearing, [Rebecca] present. Testimony of [Rebecca], [Rebecca] found in contempt. [Five] days in jail, [three] suspended, [two] to serve.”[1]
On March 11, 2011, Rebecca filed a motion to alter, amend, or vacate the trial court’s judgment of contempt. Before the trial court ruled on her postjudgment motion, Rebecca filed a notice of appeal to this court on March 18, 2011. On April 5, 2011, the trial court rendered an order on *936 Rebecca’s postjudgment motion that amended the contempt judgment dated February 10, 2011.[2] The trial court’s amended contempt judgment stated the following:
“On February 7, 2011, a hearing was held by this court on outstanding motions. On February 10, 2011 a contempt hearing was held regarding alleged contempt by [Rebecca] following the February 7, 2011 hearing. During the contempt hearing [Rebecca] was present and represented by her counsel. [James] was represented by his counsel. The Guardian ad Litem was present.
“[Rebecca] was placed under oath and gave testimony and the court found as follows:
“Following the February 7, 2011 hearing, the Guardian ad Litem and her client (the twelve year old child of the parties) met in the foyer outside the courtroom doors near the courtroom bathrooms and water fountain. The Guardian ad Litem and child left that area leaving the Guardian ad litem’s file including the Guardian ad Litem’s yellow notebook with her handwritten notes in it. These items were left in a chair where they were sitting in the foyer.
“[Rebecca] then walked into the foyer area where the Guardian ad Litem had previously met with her client. When the Guardian ad litem returned to the area and determined that the notebook was missing, [Rebecca] was then asked by the Guardian ad Litem and her own attorney if she knew the whereabouts of the notebook. [Rebecca] denied knowledge of its whereabouts. [Rebecca], during the February 10, 2011 hearing, admitted to taking the notebook and placing it in her crate containing her possessions. She also admitted tearing out the portion of the Guardian ad Li-tem’s notebook containing the Guardian ad Litem’s notes, placing the notes in her belongings and throwing the unused portion of the Guardian ad Litem’s notebook in the foyer trash can. [Rebecca] then left the courthouse. The Guardian ad Litem’s discarded notepad, minus the notes, was located shortly thereafter in the foyer trash can by court security. A hearing was then set on February 10, 2011 and counsel was notified.
“Prior to the February 10, 2011 hearing, [Rebecca] returned to the courtroom foyer area and she testified that one of the reasons she returned to that area was to see if her own attorney had lied to her about the existence of a security camera in the foyer area. During the February 10, 2011 hearing, [Re-becea]’s attorney, on behalf of [Rebecca], returned the Guardian ad Litem’s notes which had been taken by [Rebecca] without the Guardian ad Litem’s permission. [Rebecca] then assured this court that she returned all notes and that these notes were not copied or duplicated in any way.
“Following this hearing, the court found [Rebecca] in contempt [and] ordered Rebecca] to serve 5 days in the St. Clair County Jail. However, the court suspended all but 2 days.”
On appeal, Rebecca argues that the trial court’s contempt judgment is erroneous *937 because (1) her actions on February 7, 2011, did not constitute a direct contempt, (2) she did not receive proper notice of a constructive-contempt proceeding, and (3) the trial-court judge violated specific provisions set forth in the Alabama Canons of Judicial Ethics.
Initially, we note that the appellate briefs of both parties contain factual allegations and/or have documents attached that are not in the certified record on appeal.[3] As we have stated on many prior occasions, “[a]n appellate court is confined in its review to the appellate record, that record cannot be ‘changed, altered, or varied on appeal by statements in briefs of counsel,’ and the court may not ‘assume error or presume the existence of facts as to which the record is silent.’ ” Beverly v. Beverly, 28 So.3d 1, 4 (Ala.Civ.App.2009) (quoting Quick v. Burton, 960 So.2d 678, 680-81 (Ala.Civ.App.2006)).
Since 1994, the provisions of Rule 70A, Ala. R. Civ. P., have applied to contempt proceedings arising out of civil actions. Rule 70A(a)(2), Ala. R. Civ. P., provides, in pertinent part:
“(A) ‘Direct contempt’ means disorderly or insolent behavior or other misconduct committed in open court, in the presence of the judge, that disturbs the court’s business, where all of the essential elements of the misconduct occur in the presence of the court and are actually observed by the court, and where immediate action is essential to prevent diminution of the court’s dignity and authority before the public.
“(B) ‘Constructive contempt’ means any criminal or civil contempt other than a direct contempt.
“(C) ‘Criminal contempt’ means either “(i) Misconduct of any person that obstructs the administration of justice and that is committed either in the court’s presence or so near thereto as to interrupt, disturb, or hinder its proceedings, or
“(ii) Willful disobedience or resistance of any person to a court’s lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor.
“(D) ‘Civil contempt’ means willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.”
(Emphasis added.)
The trial court does not specify whether it found Rebecca guilty of direct contempt or constructive contempt. Such a determination is important because the procedure for finding a party in direct contempt is different from the procedure required before a party can be found guilty of constructive contempt. Rule 70A provides:
“(b) Summary Disposition of Direct Contempt Proceedings.
“(1) Finding. The court may summarily find in contempt any person who commits a direct contempt, immediately notifying the person of its *938 finding. The judge shall cause to be prepared a written order reciting the grounds for the finding, including a statement that the judge observed the conduct constituting the contempt. The order shall be signed by the judge and entered of record.
“(2) Mitigation. The court shall apprise the person of the specific conduct on which the finding is based and give that person a reasonable opportunity to present evidence or argument regarding excusing or mitigating circumstances. No decision concerning the punishment to be imposed shall be made during the course of the proceeding out of which the contempt arises, unless prompt punishment is imperative to achieve immediate vindication of the court’s dignity and authority.
“(3) Sentence. Unless it is pronounced immediately under subsections (1) and (2) above, sentence shall be pronounced in open court, in the presence of the contemnor, within seven (7) days after the completion of the proceeding out of which the contempt arose.
“(c) Disposition of Constructive Contempt Proceedings.
“(1) Initiation of Action. A proceeding based on constructive contempt, whether criminal or civil, shall be subject to the rules of civil procedure. The proceeding shall be initiated by the filing of a petition seeking a finding of contempt (the petition may be in the form of a counterclaim or cross-claim authorized under Rule 13[, Ala. R. Civ. P.]). The petition shall provide the alleged contemnor with notice of the essential facts constituting the alleged contemptuous conduct.
“(2) Issuance of Process and Notice. Upon the filing of a contempt petition, the clerk shall issue process in accordance with these rules, unless the petition is initiated by a counterclaim or cross-claim authorized under Rule 13. In any case, the person against whom the petition is directed shall be notified (1) of the time and place for the hearing on the petition and (2) that failure to appear at the hearing may result in the issuance of a writ of arrest pursuant to Rule 70A(d), to compel the presence of the alleged contemnor.
“(3) Right to Counsel. In actions involving criminal contempt, upon the request of the alleged contemnor and proof of indigence, counsel shall be appointed to represent the alleged contemnor.”
(Emphasis added.)
There is no indication in the record on appeal that the procedure set forth in Rule 70A(c), Ala. R. Civ. P., was provided to Rebecca in the present case. There is no indication that a contempt petition was filed, and, thus, there is no indication that the clerk of the trial court issued process in accordance with the Rules of Civil Procedure. Thus, the record reveals that the contempt proceeding below did not conform to the procedure set forth in Rule 70A(c), and, therefore, in order for the judgment to be valid, the trial court must have found Rebecca in direct contempt. See Carpenter v. Newman, 853 So.2d 1002, 1006 (Ala.Civ.App.2002) (concluding that the trial court had found the appellant guilty of direct contempt after considering the language in the judgment, the procedural history of the case, and the fact that there was no indication in the record that any party sought to hold the appellant in contempt).
On appeal, Rebecca argues that her actions that led to the finding of contempt were committed outside the courtroom and outside the presence of the trial-court *939 judge and that, therefore, her actions do not constitute a direct contempt of court. We agree. The plain language of Rule 70A(a)(2)(A) provides that the allegedly contemptuous behavior must have been committed in open court, in the presence of the trial-court judge, so that “all of the essential elements of the misconduct occur in the presence of the court and are actually observed by the court.” It is clear from the trial court’s findings of fact set forth above that all the essential elements of Rebecca’s misconduct did not occur in open court or in the presence of the judge. Thus, Rebecca’s misconduct could not have constituted direct contempt. See Charles Mfg. Co. v. United Furniture Workers, 361 So.2d 1033, 1036 (Ala.1978) (“Direct con-tempts are those committed in the ‘presence’ of the judge, where all of the essential elements of the misconduct are under the eye of the court, and are actually observed by the court. If some of the essential elements are not personally observed by the judge it is an indirect!, or constructive,] contempt.”).
Accordingly, because we conclude that Rebecca’s misconduct did not constitute direct contempt, and because we have determined that the procedure required for a finding of constructive contempt was not followed, we reverse the trial court’s judgment finding Rebecca in contempt.[4]
REVERSED.
THOMPSON, P.J., and THOMAS and MOORE, JJ., concur.
PITTMAN, J., concurs in the result, without writing.

. That entry was signed by the trial-court judge, see Rule 58(a) and (b), Ala. R. Civ. P. (regarding the proper methods of rendering an order or a judgment), but that judgment was not entered pursuant to Rule 58(c), Ala. R. Civ. P., until October 18, 2011. See Rule 58(c) (providing that an order or judgment shall be deemed entered for purposes of the Rules of Civil and Appellate Procedure as of the actual date of input into the State Judicial Information System).

. The trial court’s April 5, 2011, amended contempt judgment was not entered in the State Judicial Information System C'SJIS”) until October 18, 2011; thus, Rebecca’s notice of appeal, which had been filed before the February 10 and April 5, 2011, contempt judgments were actually entered into SJIS, is treated as having been filed on October 18, 2011. See Rule 4(a)(4), Ala. R.App. P. ("A notice of appeal filed after the announcement of a decision or order but before the entry of the judgment or order shall be treated as filed after the entry and on the day thereof.” (emphasis added)).

. Included in the record on appeal is an unverified motion filed by Rebecca on or about April 14, 2011, after her notice of appeal had been filed but before it became effective, which was styled "Defendant’s Reply to Contempt Details Order.” In that "motion,” which does not request any specific relief, Rebecca sets forth her version of the facts that led to the finding of contempt. The record on appeal does not contain a transcript of any court proceedings. Rebecca's April 14, 2011, motion setting forth her version of the facts cannot be considered by this court as an approved statement of the evidence or proceedings because Rebecca did not attempt to make her statement of the evidence part of the appellate record pursuant to Rule 10(d), Ala. R.App. P.

. In light of the fact that we are reversing the trial court’s judgment on the grounds set forth above, we pretermit discussion of the remainder of the arguments presented by Rebecca on appeal. Furthermore, we note that our decision does not necessarily preclude the filing of a constructive-contempt action against Rebecca.