THOMPSON, Presiding Judge.
In April 2011, the Madison County Department of Human Resources (“DHR”) filed a petition seeking to have S.W. (“the child”), who was then six years old, declared dependent. DHR alleged that the child’s stepfather had abused the child and that the stepfather had stated that the child’s mother, T.N. (“the mother”), was aware of the abuse. On April 18, 2011, the juvenile court entered an order finding the child to be dependent and awarding custody of the child to DHR. On August 5, 2011, the juvenile court entered an order adjudicating S.T.W.’s paternity of the child and continuing custody of the child with DHR.
In a February 22, 2012, order, the juvenile court continued its award of legal custody of the child with DHR, but it awarded physical custody to S.T.W. (“the father”). A few months later, on May 24, 2012, the juvenile court awarded the mother and the father joint legal and physical custody of the child, with the father receiving pri *1085 mary physical custody. That order also specified, among other things, that the mother and the father each were to submit a Rule 32, Ala. R. Jud. Admin., CS^ll child-support-obligation income statement/affidavit (“CS-41 form”) for the purposes of calculating child support. In July 2012, the mother submitted a CS^l form to the juvenile court.
On August 17, 2012, the juvenile court entered an order awarding the mother and the father joint legal custody of the child, but awarding primary physical custody to the mother. The juvenile court reserved the issue of child support and ordered the parties to submit CS-41 forms within seven days of the entry of that order. On August 21, 2012, the mother submitted another CS^ll form.
On January 28, 2013, the mother filed a “motion to compel,” seeking an order requiring the father to submit a CS-41 form and seeking the establishment of the father’s child-support obligation and an award of retroactive child support. In support of that motion, the mother again submitted a CS^ll form.
On February 19, 2013, the juvenile court entered an order scheduling the matter for a hearing on March 8, 2013, and ordering each party to furnish to the court and to all counsel four separate child-support forms as required by Rule 32.[1] The February 19, 2013, order specified that the parties were to submit those forms at least 10 days before the scheduled hearing.
On February 27, 2013, the father submitted a CS-41 form to the juvenile court. On March 5, the mother submitted the four requested child-support forms to the juvenile court. In that submission, the mother’s attorney cited complications from his recent surgery as the reason for not timely submitting those forms. In addition, the mother’s attorney stated that he had submitted several forms with only the mother’s information because, the mother’s attorney alleged, he did not have information from the father with which to complete the forms. At the March 8, 2013, hearing, the juvenile court noted that it had the forms submitted by the mother but that it could not rely on the CS-41 form she had submitted because it was not sworn. The juvenile court then stated that it had received the father’s sworn CS-41 form but that the father had not submitted the other three forms referenced in the February 19, 2013, order. The juvenile court also noted that it had entered an order in August 2012 requiring the father to submit a CS-41 form but that the father had failed to comply with that order. The following exchange then occurred:
“THE COURT: At this point, [counsel for the father], I will let you present to the Court any argument that you have as to why the father should not be held in contempt of court.
“[COUNSEL FOR THE FATHER]: I — may I have a moment?
“THE COURT: Sure.
“[COUNSEL FOR THE FATHER]: Judge, my client states that he says he claims he did not receive a copy of the orders that were previously entered by this Court.”
The juvenile court then immediately ordered the father incarcerated. In its March 8, 2013, order finding the father in “contempt of court,” the juvenile court ordered the father to be incarcerated for 72 hours. That same day, the father filed a “motion to reconsider,” arguing that he was not provided notice that the contempt issue would be considered by the juvenile *1086 court, and he argued that he “was precluded” from submitting the other three child-support forms because the mother’s CS^l form was unsworn. Also on March 8, 2013, the juvenile court denied the father’s postjudgment motion, and the father timely appealed. See Thomas v. Vanhorn, 876 So.2d 488, 491 (Ala.Civ.App.2003) (citing Rule 70A(g), Ala. R. Civ. P., and holding that an order finding a party in contempt is a final, separately appealable judgment).
The March 8, 2013, order does not specify whether the juvenile court found the father to be in civil contempt or criminal contempt. Rule 70A(a)(2)(C), Ala. R. Civ. P., specifies that “criminal contempt” is either:
“(i) Misconduct of any person that obstructs the administration of justice and that is committed either in the court’s presence or so near thereto as to interrupt, disturb, or hinder its proceedings, or
“(ii) Willful disobedience or resistance of any person to a court’s lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor.”
The rule further explains that “civil contempt” is a “willful, continuing failure or refusal of any person to comply with a court’s lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with.” Rule 70A(a)(2)(D), Ala. R. Civ. P. A finding of civil contempt seeks to compel compliance with a court’s order; a criminal-contempt determination is designed to punish a con-temnor for disobedience of a court’s order. State v. Thomas, 550 So.2d 1067, 1072 (Ala.1989).
“ ‘The question of whether [an action involves] civil contempt or criminal contempt becomes important ... because a contemnor must be in a position to purge himself from the contempt. Mims v. Mims, 472 So.2d 1063 (Ala.Civ.App.1985). In order to purge himself in a criminal contempt case, the contemnor must pay the fine imposed, serve the authorized time, or do both. Kalupa v. Kalupa, 527 So.2d 1313 (Ala.Civ.App.1988). In order to purge himself in a civil contempt case, the contemnor must comply with the court’s order. Rule 33.4(b), A[la]. R.Crim. P.’ ”[2]
Davenport v. Hood, 814 So.2d 268, 272-73 (Ala.Civ.App.2000) (quoting Hill v. Hill, 637 So.2d 1368, 1370 (Ala.Civ.App.1994)).
In this case, the juvenile court did not order the father to be incarcerated only until he complied with its orders to complete the child-support forms; in other words, the juvenile court was not seeking to obtain the father’s compliance with its orders requiring him to submit information so that his child-support obligation could be determined. Rather, the juvenile court ordered the father to serve 72 hours in jail for his failure to comply with its orders. Thus, the contempt finding in the March 8, 2013, order is not one of civil contempt. Rather, the record indicates that the juvenile court’s contempt finding was a punishment for the father’s failure to complete the child-support forms as required by the February 19, 2013, order and perhaps for the father’s failure to comply with the earlier orders requiring that he submit a CS-41 form. We, therefore, conclude that the record demonstrates that the juvenile court found the father to be in criminal contempt. See Ex parte Sheffield, 120 So.3d 1091, 1094 (Ala.Civ.App.2013).
*1087 That determination, however, does not end the inquiry regarding the nature of the contempt finding. The juvenile court’s March 8, 2013, order does not specifically state whether the court found the father in direct contempt or indirect, i.e., constructive, contempt under Rule 70A. “Direct contempts are those committed in the judge’s presence, where all of the essential elements of the contempt are under the eye of the court, and are actually observed by the court.” State v. Thomas, 550 So.2d at 1072. “An indirect contempt is committed outside the presence of the court and is characterized by the act of disobeying the court’s orders.” Id. Recently, this court has explained:
“ ‘Such a determination is important because the procedure for finding a party in direct contempt is different from the procedure required before a party can be found guilty of constructive contempt.’ Dreading v. Dreading, 84 So.3d 935, 937 (Ala.Civ.App.2011). Rule 70A(a)(2), Ala. R. Civ. P., defines ‘direct contempt’ and ‘constructive contempt’ as follows:
“ ‘(A) “Direct contempt” means disorderly or insolent behavior or other misconduct committed in open court, in the presence of the judge, that disturbs the court’s business, where all of the essential elements of the misconduct occur in the presence of the court and are actually observed by the court, and where immediate action is essential to prevent diminution of the court’s dignity and authority before the public.
“‘(B) “Constructive contempt” means any criminal or civil contempt other than a direct contempt.’
“Rule 70A(b) and (c), Ala. R. Civ. P., provide the procedure for finding a party guilty of either direct contempt or constructive contempt:
“ ‘(b) Summary Disposition of Direct Contempt Proceedings.
“ ‘(1) Finding. The court may summarily find in contempt any person who commits a direct contempt, immediately notifying the person of its finding. The judge shall cause to be prepared a written order reciting the grounds for the finding, including a statement that the judge observed the conduct constituting the contempt. The order shall be signed by the judge and entered of record.
“ ‘(2) Mitigation. The court shall apprise the person of the specific conduct on which the finding is based and give that person a reasonable opportunity to present evidence or argument regarding excusing or mitigating circumstances. No decision concerning the punishment to be imposed shall be made during the course of the proceeding out of which the contempt arises, unless prompt punishment is imperative to achieve immediate vindication of the court’s dignity and authority.
“ ‘(3) Sentence. Unless it is pronounced immediately under subsections (1) and (2) above, sentence shall be pronounced in open court, in the presence of the contemnor, within seven (7) days after the completion of the proceeding out of which the contempt arose.
“ ‘(c) Disposition of Constructive Contempt Proceedings.
“‘(1) Initiation of Action. A proceeding based on constructive contempt, whether criminal or civil, shall be subject to the rules of civil procedure. The proceeding shall be initiated by the filing of a petition seeking a finding of contempt (the *1088 petition may be in the form of a counterclaim or cross-claim authorized under Rule 13[, Ala. R. Civ. P.]). The petition shall provide the alleged contemnor with notice of the essential facts constituting the alleged contemptuous conduct.
“ ‘(2) Issuance of Process and Notice. Upon the filing of a contempt petition, the clerk shall issue process in accordance with these rules, unless the petition is initiated by a counterclaim or cross-claim authorized under Rule 13. In any case, the person against whom the petition is directed shall be notified (1) of the time and place for the hearing on the petition and (2) that failure to appear at the hearing may result in the issuance of a writ of arrest pursuant to Rule 70A(d), to compel the presence of the alleged contemnor.
“‘(3) Right to Counsel. In actions involving criminal contempt, upon the request of the alleged con-temnor and proof of indigence, counsel shall be appointed to represent the alleged contemnor. This right to appointed counsel, once asserted, may be subsequently waived by the alleged contemnor in writing or on the record, after the court has ascertained that the alleged contem-nor knowingly, intelligently, and voluntarily desires to forgo the right to counsel. The court may, in its discretion, appoint advisory counsel to advise the alleged con-temnor.’ ”
Ex parte Sheffield, 120 So.3d at 1094.
The contemptuous conduct in this case was not committed in court and did not interrupt the proceedings; rather, the father’s conduct was “committed outside the presence of the court and [was] characterized by the act of disobeying the court’s orders.” State v. Thomas, 550 So.2d at 1072. See also Ex parte Sheffield, 120 So.3d at 1094 (discussing the differences between direct and constructive contempt under Rule 70A). Accordingly, the contempt finding at issue was one of constructive contempt. Id.; see also Dreading v. Dreading, 84 So.3d 935, 938 (Ala.Civ.App.2011). However, as in Ex parte Sheffield, “[t]here is no indication in the record that the contempt proceeding was initiated by the filing of a petition, that the trial-court clerk issued process for such a petition in accordance with the Rules of Civil Procedure, or that a hearing on such a petition was conducted.” 120 So.3d at 1096. The father was provided no notice that the issue of constructive contempt would be considered at the hearing. It is clear from the record that the procedures afforded under Rule 70A(c) to assert and support a claim of constructive contempt were not followed in this case.
We do not condone the father’s failure or refusal to comply with several court orders, particularly when those orders pertain to attempts to require the father to support his child. The juvenile court has the authority to hold a party in civil or criminal contempt for a failure to comply with court orders.[3] See discussion of civil and criminal contempt, supra. Thus, the juvenile court, if it follows the procedures set forth in Rule 70A, has the authority to fine a party violating its orders, to order the party confined until he or she complies with court orders, or to punish a party for noncompliance. However, in this case, because the juvenile court failed to follow the *1089 procedures set forth under Rule 70A for finding a party in constructive contempt, we must reverse its March 8, 2013, order.
REVERSED.
PITTMAN, THOMAS, MOORE, and DONALDSON, JJ„ concur.

. Those forms were a CS-41 form, a CS-42 child-support guidelines form, a CS-43 child-support-guidelines notice-of-compliance form, and a CS-47 child-support information sheet.

. Rule 33, Ala. R.Crim. P., previously governed contempt proceedings arising out of civil actions. See Gladden v. Gladden, 942 So.2d 362, 370 n. 2 (Ala.Civ.App.2005).

. We also note that the juvenile court may protect the child's right to support from his parents that has been impeded by the delays in filing the appropriate child-support forms by ordering that child support be made retroactive.