Rel: March 6, 2026

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**. Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is published in **Southern Reporter**.

# ALABAMA COURT OF CIVIL APPEALS

## OCTOBER TERM, 2025-2026

_____

### CL-2025-0377

_____

### Jessica Bugge

### v.

### Jeb S. Fannin

### Appeal from Talladega Circuit Court
### (DR-21-900167)

FRIDY, Judge.

Attorney Jessica Bugge appeals from an order that Talladega Circuit Judge Jeb S. Fannin entered finding her in contempt for her failure to attend the third day of trial as scheduled in the underlying divorce action. For the reasons set forth herein, we affirm the order in

part, reverse it in part, and remand the matter for the entry of an order consistent with this opinion.

Background

On June 6, 2021, Jennifer Riddle commenced a divorce action in the Talladega Circuit Court ("the trial court"). On September 23, 2021, Bugge filed a notice of appearance in the divorce action on behalf of Riddle. The trial court first set the divorce action for trial on April 19, 2022, but continued it numerous times before eventually beginning the trial in March 2023. From the record before us, it appears that the trial was held on two days and that the third day of the trial was scheduled for May 15, 2023. However, the trial court continued the resumption of the trial several times for reasons not pertinent to this appeal.

On October 16, 2024, the trial court set the resumption of the trial for December 9 and 10, 2024. On Friday, December 6, 2024, Bugge filed a motion to continue the trial, which was scheduled to resume the following Monday. The trial court granted the continuance and, on December 11, 2024, rescheduled the trial for December 16 and 18, 2024. On December 12, 2024, Bugge filed a notice of trial conflict and a motion to continue, which the trial court granted.

The trial court held a status conference on December 18, 2024, to determine available dates for the resumption of the trial. Based on the dates the attorneys provided, the trial court entered an order on January 14, 2025, setting the case for trial on January 30 and 31, 2025. On January 27, 2025, Bugge filed a notice of trial conflict. On January 29, 2025, she filed a motion to continue the trial in this case, asserting that she had a hearing in a criminal case in the Franklin Circuit Court that day, that a motion for sanctions relating to discovery requests was still pending, that the defendant had requested additional documents from her client, Riddle, and that the defendant still had not provided certain financial information that Bugge had requested during discovery. Bugge again sought a continuance "until such time as all pending motions in this case have been heard, and all Orders complied with, in order that both parties can prepare for trial based on some advance knowledge of what issues and facts stand to be addressed." Bugge did not attend the trial on January 30, 2025.

On February 26, 2025, the trial court entered an order ("the show-cause order") directing Bugge to appear before the court on March 6, 2025, to show cause as to why she should not be held in contempt for

failing to attend the trial as ordered and to show cause why sanctions should not be imposed on her. In the show-cause order, the trial court explained that the trial had been specially set for January 30 and 31, 2025, based on dates of availability that Bugge had provided, but that, when the case was called for trial on January 30, Bugge was absent. The trial court noted that Bugge had failed to provide a justifiable reason for her absence and had not gained the court's permission to be absent.

On March 5, 2025, Larry Riddle, the defendant in the action, filed a motion for sanctions to recover the expenses he had incurred related to the January 30, 2025, trial date for which Bugge had failed to appear. He explained that he lived in The Villages in Florida and that he had traveled 1,050 miles roundtrip to attend the trial in Talladega. Using fifty-one cents per mile to calculate his travel expenses, he requested $546 for his travel; $287.68 for hotel expenses; $341.77 for meals, gas, etc.; and an attorney fee of $4,650 incurred from December 18, 2024, through January 30, 2025.[1] He attached an affidavit and documentary evidence attesting to the validity of those expenses to his motion.

---

[1]Based on Riddle's figures, the amount he requested for his travel should have been $535.50.

At the March 6, 2025, hearing, Bugge gave a rambling explanation for her absence that boiled down to her belief, which she said was based on court documents, that she had a jury trial in a criminal case in the Franklin Circuit Court ("the Franklin criminal case") scheduled for the morning of January 30. Judge Fannin asked Bugge why she did not e-mail him that morning to notify him that she would not be in attendance at the trial in this case. She noted that he had retired and said that she did not have his e-mail address. Judge Fannin told Bugge that, even though he was retired, he still received e-mail at his AlaCourt e-mail address.[2]

The attorney for the defendant introduced into evidence the AlaCourt case-action-summary sheet for the Franklin criminal case indicating that on December 20, 2024, that case was set for a pretrial docket on January 30, 2025, and that it was not set for a jury trial until April 2025. The attorneys and the trial court took a closer look at the

---

[2]During the litigation of the divorce action, Judge Fannin retired. On September 9, 2024, the presiding judge of the Talladega Circuit Court entered an order observing that he had received an order from the Chief Justice of the Alabama Supreme Court assigning Judge Fannin to serve as a circuit and district judge in Talladega County, and he assigned Judge Fannin to continue to preside over the Riddle divorce action.

case-action-summary sheet, which indicated that the Franklin criminal case had never been set for trial on January 30, 2025. During a conversation among Bugge, Judge Fannin, and defense counsel, Bugge said that she did not remember "if this was the jury trial or if this was the pretrial, but in either way, shape or form, I was -- I did have to be there. I was not excused. I did try to get excused."

Judge Fannin asked Bugge whether she had tried to contact defense counsel in the underlying divorce action about the trial setting. Bugge's response was evasive, and the defense attorney told Judge Fannin that his office had not received a telephone call or an e-mail from Bugge regarding the January 30, 2025, trial setting.

Bugge told Judge Fannin that he had not responded to her request to continue. He said: "If I didn't respond, that would mean I didn't want to continue it. Can you not understand that?" Bugge said that she did not and that the trial court's failure to rule on her motion to continue did not provide her with any direction. She also told Judge Fannin that her failure to attend the trial could not be considered contempt because, she said, it was not willful. She also said that she believed that a criminal case took precedence over this "financial case."

6

On April 2, 2025, the trial court entered an order ("the contempt order") finding that the divorce action had been set for trial twice in December and that Bugge had requested a continuance both times. After granting both continuances, the trial court wrote, it had held a status conference to ascertain when the attorneys for the parties could be available for trial. The attorneys were all available on January 30 and 31, 2025, so the trial court set those dates for the trial to resume.

In the contempt order, the trial court found that, on December 20, 2024, a pretrial hearing was scheduled for January 30, 2025, in the Franklin criminal case. It also found that Bugge did not follow the Attorney Calendar Conflict Resolution Order ("the conflict-resolution order")[3] by failing to contact counsel for the defendant in the divorce action immediately to resolve the conflict when she received notice of the

---

[3]Pursuant to Rule 201(b)(2), Ala. R. Evid., we take judicial notice that the conflict-resolution order, adopted effective October 22, 1990, outlines the procedure an attorney is to follow when he or she is scheduled to appear in more than one court at the same time or within such a short period that the attorney cannot reasonably be expected to appear in both courts. The conflict-resolution order provides that, upon receiving notice of a trial or hearing that conflicts with a trial or hearing that has already been set, the attorney is to immediately attempt to resolve the conflict and, if he or she is unable to do so, to "promptly" attempt to resolve the conflict by filing an appropriate motion in the courts involved.

7

date of the pretrial conference in the Franklin criminal case. The trial court also noted that Bugge did not file a notice of conflict with the trial court until January 27, 2025, and that Bugge had failed to follow the conflict-resolution order by failing to consult with Judge Fannin or notify him that she had made efforts to resolve the scheduling conflict and that those efforts had been unsuccessful.

The trial court found that Bugge had filed a motion to continue in the divorce action on January 29, 2025, the day before the trial was set to resume, in which she referred to her scheduling conflict and other things. The trial court did not continue the divorce action, and it noted in the contempt order that, pursuant to the conflict-resolution order, "no resolution of a conflict shall result in a continuation unless a continuance is expressly ordered by the trial judge." Additionally, the trial court found that, on the morning of January 30, 2025, Bugge called the Talladega circuit clerk's office and said that she would not be attending the trial that day. When the trial court called the case for trial, Bugge did not appear. Finally, the trial court found, Bugge's "argument to support her absence from the trial is without merit, and she should be adjudged in

8

contempt of court for her failure to attend a specially set trial, with a specially sitting trial judge."

The trial court sentenced Bugge to the Talladega County jail for contempt but suspended that sentence to provide Bugge with an opportunity to purge herself of contempt. The trial court directed Bugge to pay the defendant's attorney fee of $4,500 and $1,175.45 for the expenses he had incurred for traveling to Talladega for the trial; she was to remit the payments within thirty days from the date of the contempt order. If she failed to remit those payments, the trial court ordered, the jail sentence would be imposed.

Bugge appealed the contempt order to the Alabama Supreme Court on May 14, 2025. That court transferred the appeal to this court on May 22, 2025, pursuant to § 12-3-10, Ala. Code 1975.

Analysis

Bugge contends that, because the contempt order does not specify whether she was in direct or indirect contempt, or civil or criminal contempt, it is inadequate and due to be reversed. To support her contention, Bugge cites Charles Manufacturing Co. v. United Furniture Workers, 361 So. 2d 1033, 1036 (Ala. 1978). However, that case involves

the notice that must be provided to a person against whom contempt

charges have been levied, not what information is to be included in the

contempt judgment itself. To the extent that Bugge argues that she was

deprived of notice as to the nature of the contempt charges against her,

i.e., that she was not told whether the trial court's show-cause order

alleged direct or indirect contempt, or civil or criminal contempt, we have

found no authority that requires such specificity in a show-cause order.

In Charles Manufacturing, our supreme court discussed the various

types of contempt, explaining that

> "[c]ontempts are divided along two lines: first, civil or
> criminal contempt. Civil contempt sanctions seek to compel or
> coerce compliance with orders of the court in the future, while
> a criminal contempt is one in which the purpose of the
> proceeding is to impose punishment for disobedience of orders
> of the court. The second line divides contempts into those
> which are either direct or indirect. Direct contempts are those
> committed in the 'presence' of the judge, where all of the
> essential elements of the misconduct are under the eye of the
> court, and are actually observed by the court. If some of the
> essential elements are not personally observed by the judge it
> is an indirect contempt."

361 So. 2d at 1035-36 (citations omitted). In Ex parte Sheffield, 120 So.

3d 1091, 1094-96 (Ala. Civ. App. 2013), this court determined that the

failure of an attorney to appear for a scheduled hearing or trial

constitutes constructive, or indirect, contempt and that the accused

attorney is entitled to due process that requires him or her to be advised of the charges against him or her, as well as an opportunity to be heard. See also Ex parte Tarpley, 293 Ala. 137, 300 So. 2d 409 (1974). The preliminary statement, here the show-cause order, "must set forth all facts essential to the court's jurisdiction, including facts constituting a contempt, and the statement must clearly apprise the person charged of the nature and cause of the accusation." Charles Mfg., 361 So. 2d at 1037.

In its show-cause order, the trial court notified Bugge that the wrongful conduct that was the basis of the alleged contempt was her failure to attend the specially set trial on January 30, 2025, and the trial court provided Bugge with a hearing in which she was afforded the opportunity to address her actions and to "give testimony relevant either to the issue of complete exculpation or extenuation of the offense and in mitigation of the penalty imposed." Charles Mfg., 361 So. 2d at 1037. Therefore, we conclude that the requirements of due process were satisfied.

Bugge also argues that the contempt order did not indicate whether she was in civil contempt or in criminal contempt and points out that each type is governed by a different standard of review and each provides

11

for different types of remedies. In <u>State v. Thomas</u>, 550 So. 2d 1067, 1072 (Ala. 1989), our supreme court discussed the differences between civil and criminal contempt, writing:

> "Contempts are characterized as either civil or criminal. Civil contempt seeks to compel or coerce compliance with orders of the court, while a criminal contempt is one in which the purpose of the proceeding is to impose punishment for disobedience of orders of the court.
>
> "The sanction for civil contempt continues indefinitely until the contemnor performs as ordered. A critical distinction is that the sanction for criminal contempt is limited in Alabama district and circuit courts to a maximum fine of $100 and imprisonment not to exceed five days."

(Citations omitted.) The <u>Thomas</u> court also observed that "[t]he line between civil and criminal contempt can sometimes become blurred." <u>Id.</u> at 1073. That court wrote: "Confusion arises in attempts to classify civil and criminal contempts, because the elements often overlap. In appropriate circumstances, however, a party's actions can support a finding of both civil and criminal contempt." <u>Id.</u> <u>See also</u> <u>Willis v. Willis</u>, 329 So. 3d 650, 661-62 (Ala. Civ. App. 2020) (holding that trial court found mother in both criminal contempt and civil contempt).

In <u>Kizale v. Kizale</u>, 254 So. 3d 233, 237-38 (Ala. Civ. App. 2017), this court wrote:

12

"The two types of contempt -- criminal and civil -- are governed by different standards of review. In the case of civil contempt, we have often explained that

"'whether a party is in contempt of court is a determination committed to the sound discretion of the trial court, and, absent an [excess] of that discretion or unless the judgment of the trial court is unsupported by the evidence so as to be plainly and palpably wrong, this court will affirm.'

"Unlike civil contempt, criminal contempt requires proof beyond a reasonable doubt of the alleged contemnor's guilt.

"'The standard of review in an appeal from an adjudication of criminal contempt occurring in a civil case is whether the offense, i.e., the contempt, was proved beyond a reasonable doubt. ...

"'"The essential elements of the criminal contempt for which punishment has been imposed on [the defendant] are that the court entered a lawful order of reasonable specificity, [the defendant] violated it, and the violation was wilful. Guilt may be determined and punishment imposed only if each of these elements has been proved beyond a reasonable doubt."'"

(Citations and footnote omitted.)

In Hill v. Hill, 637 So. 2d 1368, 1370 (Ala. Civ. App. 1994), this court explained that whether a certain charge involves civil contempt or criminal contempt becomes important because one facing a contempt

13

charge must be able to purge himself or herself from the contempt. To purge oneself in a criminal-contempt case, the contemnor must pay the fine imposed, serve the authorized time, or do both. Id. To purge oneself in a civil-contempt case, the contemnor must comply with the court's order. Id.

Here, the trial court found Bugge in contempt for her failure to attend the trial as scheduled and her failure to follow the provisions set forth in the conflict-resolution order and sentenced her to five days in the Talladega County jail. Because Bugge could not comply with the trial court's order to attend trial on January 30, 2025, she could not purge herself of contempt; therefore, the trial court's finding of contempt necessarily was intended to punish Bugge for her failure to attend the trial as scheduled. Thus, the trial court's finding of contempt was criminal in nature, not civil. See Ingram v. Allred, 119 So. 3d 1176, 1186 (Ala. Civ. App. 2012) (holding that attorney was held in criminal contempt for failing to attend hearing because purpose of contempt was to punish attorney rather to compel attendance at hearing because attorney could not "travel back in time" to appear at that hearing to purge herself of contempt).

14

To hold a party in either criminal contempt under Rule 70A(a)(2)(C), Ala. R. Civ. P., or civil contempt under 70A(a)(2)(D), Ala. R. Civ. P., the trial court must find beyond a reasonable doubt that the party willfully failed or refused to comply with a court order. T.L.D. v. C.G., 849 So. 2d 200, 205 (Ala. Civ. App. 2002); Shook v. Shook, 385 So. 3d 65, 85 (Ala. Civ. App. 2023). Bugge contends that, here, the evidence did not prove beyond a reasonable doubt that she had acted willfully and deliberately when she did not attend the trial on January 30, 2025. Bugge argues that a finding of contempt would be appropriate in this case only if the evidence showed that she had "intended to thwart the [trial] court's order, or to avoid completing the case." Bugge's brief, p. 6. She cites no authority for that contention, however.

The evidence supports the trial court's findings that Bugge knew that the divorce action was to resume in the trial court on January 30, 2025, that she made the decision to attend a pretrial docket call in the Franklin criminal case instead, and that she did not immediately contact defense counsel to resolve the scheduling conflict when she received notice of the date of the pretrial conference in the Franklin criminal case, as the conflict-resolution order requires. The evidence also supports the

15

trial court's finding that Bugge did not file a notice of conflict with the trial court until January 27, 2025, and that she had failed to consult promptly with Judge Fannin about her efforts to resolve the conflict, as required by the conflict-resolution order. This evidence supports a determination that, beyond a reasonable doubt, Bugge's failure to attend the trial on the date scheduled was willful and deliberate and that her conduct constituted criminal contempt. Therefore, the trial court did not err in finding Bugge in contempt.

Bugge also contends that, if the trial court properly found her in criminal contempt and a jail sentence was the consequence, the trial court could not subject her to purging herself from that contempt by requiring her to pay the defendant's expenses. In the contempt order, the trial court directed that Bugge could purge herself from contempt if she paid the travel expenses the defendant incurred traveling to Talladega to attend the trial and the attorney fee the defendant incurred for his attorney's immediate preparation and attendance at the trial on January 30, 2025. Bugge contends that the trial court's order permitting her to purge herself of contempt in this manner is inconsistent with a finding of criminal contempt, arguing that, if the jail sentence was punishment,

then the finding of contempt "should not be subject to being purged by payment of a large sum of money to the defendant." Bugge's brief, p. 19. As discussed, we conclude that the trial court held Bugge in criminal contempt, not civil contempt, and, as a result, we agree with Bugge that, as part of the contempt action, the trial court lacked authority to impose on her the requirement that she pay the defendant the expenses he requested in his motion for sanctions to purge herself of contempt.

"Sanctions for criminal contempt are limited by statute to a maximum fine of $100 and imprisonment not to exceed five days. See Ala. Code 1975, § 12-11-30(5)." Pate v. Guy, 934 So. 2d 1070, 1072 (Ala. Civ. App. 2005). "'To purge [oneself] in a criminal contempt case, the contemnor must pay the fine imposed, serve the authorized time, or do both." Davenport v. Hood, 814 So. 2d 268, 272 (Ala. Civ. App. 2000) (citing Kalupa v. Kalupa, 527 So. 2d 1313 (Ala. Civ. App. 1985)). Because the trial court could not properly order Bugge to pay the sanctions the defendant requested as punishment for her criminal contempt, the contempt order is reversed insofar as it directs Bugge to pay the attorney fee and travel expenses the defendant requested as part of the contempt matter. In reaching this conclusion, we are not to be understood as

17

holding that a trial court can never suspend a sentence or fine under the appropriate circumstances. See, e.g., Kent v. Herchenhan, 215 So. 3d 1079, 1084 (Ala. Civ. App. 2016).

<u>Conclusion</u>

The contempt order is reversed insofar as it directed Bugge to pay the attorney fee and travel expenses of the defendant to purge herself of contempt. The balance of the contempt order is affirmed. The cause is remanded for the trial court to enter an order consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Moore, P.J., and Edwards, Hanson, and Bowden, JJ., concur.