Rel: May 31, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

————————————————

### SC-2023-0740

————————————————

**Crystal Kaye Coan**

**v.**

**Championship Property, LLC**

**Appeal from Lauderdale Circuit Court**
**(CV-18-900229)**

SELLERS, Justice.

Crystal Kaye Coan appeals from a judgment of the Lauderdale Circuit Court finding her in contempt of court and imposing a sanction

based on her failure to comply with its order directing her to deposit monthly payments with the clerk of the court pending the outcome of an ejectment action filed by Championship Property, LLC. We affirm in part; reverse in part; and remand with instructions.

## I. Facts

In August 2010, Coan purchased a home and property ("the property") located in Lauderdale County. The property was subject to a mortgage, which was ultimately assigned to Carrington Mortgage Services, LLC; Coan defaulted on the note secured by the mortgage. In December 2017, Carrington foreclosed on the property and purchased it at the foreclosure sale. In May 2018, Carrington sold the property to Championship at an on-line auction. Championship thereafter commenced an action against Coan, pursuant to Ala. Code 1975, § 6-6-280, alleging that it was the "title owner" of the property and seeking possession of the property, as well as damages for Coan's wrongful retention of the property. Coan filed an answer, asserting as an affirmative defense that the foreclosure sale was void and that Championship had, therefore, not acquired title to the property. Coan subsequently filed an "Amended Answer and Counterclaim," adding

2

third-party defendants to the ejectment action and asserting various counterclaims and third-party claims relating to the alleged wrongful foreclosure. In January 2023, Championship filed a motion requesting that the trial court require Coan to deposit $2,000 per month with the clerk of the court pending a final ruling in the ejectment action, i.e., resolution of Championship's ejectment claim and Coan's counterclaims and third-party claims relating to the alleged wrongful foreclosure. On March 9, 2023, the trial court, over Coan's objection, entered an order ("the escrow order") requiring Coan to begin depositing payments of $800 per month, beginning March 1, 2023, with the clerk of the court pending further order of the court:

> "[Championship's] Motion to require [Coan] to deposit funds into Court is hereby GRANTED. [Coan] shall begin paying $800 per month beginning March 1, 2023[,] and continuing in like amount on the first day of each month thereafter until further Order of the Court. The Court will properly award any accumulation of such funds at the conclusion of the case."

(Capitalization in original.)

After Coan failed to deposit the March, April, and May 2023 court-ordered payments, Championship moved the trial court to hold her in contempt of court. The trial court entered an order, setting the matter

3

for a hearing and allowing Coan 18 days to "purge the alleged contempt, show cause or face incarceration." Following a hearing, the trial court entered an order ("the contempt order"), finding Coan in contempt. As a sanction for the contempt, the trial court ruled in favor of Championship on its ejectment claim and awarded it possession of the property:

> "The Court held a hearing for [Coan] to show cause why she should not be held in contempt of court. After hearing the testimony and evidence, the Court finds that [Coan] is in contempt of court. [Championship] requested at the [contempt] hearing that as a sanction, [its] Petition for Ejectment be granted. The Court having considered several possible sanctions for [Coan's] actions is of the considered opinion that [Championship's] Petition for Ejectment is due to be and is hereby GRANTED.
>
> "It is hereby ORDERED that [Championship's] right to possession of [the property] … is GRANTED. [Coan] is hereby ORDERED to turn over possession of said property to [Championship] no later than (10) days from the date of this Order. Any claim or right, if any, to possession by [Coan] is hereby TERMINATED.
>
> "IN THE EVENT POSSESSION IS NOT RESTORED OR RELINQUISHED TO [CHAMPIONSHIP] UPON THE EXPIRATION OF TEN (10) DAYS FROM THE DATE OF THIS ORDER, THE SHERIFF OF LAUDERDALE COUNTY IS HEREBY AUTHORIZED TO PUT [CHAMPIONSHIP] INTO POSSESSION OF [THE PROPERTY]."[1]

---

[1]Coan has since been evicted from the property pursuant to the contempt order.

(Capitalization in original.)

Coan filed a motion to alter, amend, or vacate the contempt order, which was denied. Coan appealed.[2] We note that Coan's counterclaims and third-party claims relating to the validity of the foreclosure are not before us but remain pending before the trial court.

## II. Discussion

### A. The Escrow Order

Coan argues that the escrow order, requiring her to deposit $800 per month with the clerk of the court pending the final resolution of this litigation, is not a lawful order that will support a finding of contempt because, she says, the order has no basis in law or equity. Coan specifically argues that if the trial court determines that the foreclosure was valid, then Championship may recover damages under § 6-6-280(b)

---

[2]Rule 70A(g)(2), Ala. R. Civ. P., provides that, "[i]f the person found in contempt [in a civil action] is not being held in custody pursuant to the adjudication of contempt, the adjudication is reviewable by appeal." See also McCarron v. McCarron, 171 So. 3d 22, 27 (Ala. Civ. App. 2015) ("'[A] court order finding a party in contempt and imposing a [sanction] conditioned on the failure to purge is a final, appealable order on the issue whether the party is in contempt of court.'" (quoting The Docks Venture, L.L.C. v. Dashing Pac. Grp., Ltd., 141 Ohio St. 3d 107, 112, 22 N.E. 3d 1035, 1040 (2014))).

(providing that, in an ejectment action, a plaintiff "may recover … mesne profits and damages for waste or any other injury to the lands, as the plaintiff's interests in the lands entitled him to recover, to be computed up to the time of the verdict"). Coan posits that the escrow order is essentially a seizure of mesne profits in anticipation of a favorable outcome for Championship with regard to the validity of the foreclosure. Although this Court has not addressed this specific situation, we conclude that, under the facts and circumstances presented here, the trial court properly entered the escrow order, which was designed as an equitable remedy to maintain the status quo and to protect the parties' competing interests in the property, pending a final ruling on the issue of the right to possession. See Alabama Power Co. v. Drummond, 559 So. 2d 158, 162 (Ala. 1990) (noting that a trial court has "broad power to fashion judgments"), and American Family Care, Inc. v. Irwin, 571 So. 2d 1053, 1061 (Ala. 1990) ("The trial court is authorized in equity proceedings to mold its judgment so as to adjust the equities of all the parties and to meet the obvious necessities of each situation."). In its motion requesting the escrow order, Championship alleged, in relevant part:

6

"5. [Championship] is a small two-person business … that does various activities as a second-job type situation for the two members. One of the things Championship does occasionally is purchase a parcel of property or house, fix it up making improvements[,] and try to sell the property for a profit.

"….

"8. Carrington foreclosed on the subject property on December 6, 2017, and purchased it at a foreclosure sale.

"[9]. Championship purchased the subject property from Carrington on May 9, 2018.

"[10.] [Coan] has continued to reside at the subject property now for approximately twenty-four (24) months without making mortgage or rental payments to any of the parties.

"….

"[12.] Coan should not be allowed to retain possession of the property and live rent-free pending the resolution of the claims asserted in this action. While Coan remains living on the property, without making payments to maintain, insure, pay for or rent the property[,] she has no motivation to resolve the case. Currently, she can (and has been for two years) just liv[e] there free at [Championship's] expense. [Championship] has a note and mortgage payment, tax expense[,] and has had insurance expense for the last two years [and was informed by its insurance carrier that it could no longer insure the property under the current circumstances]."

(Footnote omitted.)

In other words, Championship, claiming ownership of the property, alleged that Coan had occupied the property since it was foreclosed upon in December 2017 until January 2023 and that she had done so without providing any compensation to anyone for her holdover possession.[3] Coan, on the other hand, claimed to be the rightful owner of the property because, she said, the foreclosure sale was invalid and Championship, therefore, never acquired title to the property. Coan does not argue, and has presented no evidence indicating, that she was not in default under the note secured by the mortgage. The trial court recognized that, since December 2017, Coan had occupied the property with no burdens of ownership or tenancy. Because Coan had occupied the property for such an extended amount of time without contributing anything monetarily, the trial court determined that it was only equitable to require her to contribute $800 per month until the issue of the right to possession could be resolved. The escrow order essentially places no obligation on Coan that did not already exist. Coan concedes that, before the foreclosure, her

---

[3]Carrington had also filed an ejectment action against Coan seeking possession of the property, but it dismissed that action after it sold the property to Championship.

monthly mortgage payment was approximately $800 per month. She also represents that if the trial court determines that the foreclosure is invalid, she would be entitled to immediate possession of the property and "the debt springs back into existence upon [its] ruling."[4] Coan's brief at 30. The trial court also recognized that, while Coan had occupied the property for free, Championship had been responsible for paying a mortgage on the property, taxes, and expenses associated with insurance. Additionally, Championship averred that it had been informed by its insurance carrier that it could no longer insure the property under the circumstances, presumably because Championship had no formal rental agreement with Coan. In fact, Coan has conceded that, if anything happens to the property, it would just "be gone." Finally, although Coan claims that the escrow order is in substance a "prejudgment seizure of mense profits in anticipation of a favorable outcome" for Championship with regard to the issue of the validity of the foreclosure, Coan's brief at

---

[4]Hypothetically, if the trial court were to determine that the foreclosure was invalid, then Coan would be restored to the status quo ante -- meaning that she would remain in possession of property subject to the mortgage held by Carrington. If Coan does not pay the mortgage, then Carrington could foreclose on the property, and the parties would be back to square one. There is no scenario that would allow Coan to freely remain in possession of the property.

29, the trial court made clear in the escrow order that it intended to "properly award any accumulation" of the escrowed funds at the conclusion of the action. Accordingly, although Championship may be entitled to damages under § 6-6-280(b) as a remedy if it ultimately prevails on the issue of the right to possession, the existence of a remedy available only at the conclusion of the case does not prevent a trial court from managing cases before it by fashioning an interim remedy to protect the property or the "res" that is the subject of the litigation.

## B. The Contempt Order

Coan argues that, even if the trial court had the authority to enter the escrow order requiring her to deposit the monthly court-ordered payments with the clerk of the court, she is not in contempt for failing to comply with the escrow order. The trial court did not indicate in its contempt order whether it found Coan in civil or criminal contempt. In fact, it has been recognized that a finding of contempt can be both civil and criminal in nature. See, e.g., Norland v. Tanner, 563 So. 2d 1055, 1058 (Ala. Civ. App. 1990) ("There is no legal prohibition against the finding of both criminal and civil contempt in an appropriate factual setting."). Notably, Coan does not speculate regarding the nature of the

contempt, nor does she ask this Court to make such a determination. Rather, Coan states that, regardless of whether the trial court found her in civil or criminal contempt, its contempt order should be vacated because, she says, her failure to deposit the court-ordered payments was not willful but, rather, was because of financial hardship and her inability to pay. Accordingly, the only question before us is whether the evidence supports a finding that Coan willfully failed or refused to comply with the escrow order.

Rule 70A, Ala. R. Civ. P., governs contempt proceedings arising out of civil actions, whether the contempt is civil or criminal. "To hold a party in contempt under either Rule 70A(a)(2)(C)(ii) [criminal contempt] or (D) [civil contempt], Ala. R. Civ. P., the trial court must find that the party willfully failed or refused to comply with a court order." T.L.D. v. C.G., 849 So. 2d 200, 205 (Ala. Civ. App. 2002). A determination of whether to hold a party in contempt is within the sound discretion of the trial court, and this Court will not reverse that determination absent a showing that the trial court exceeded its discretion or that its judgment is not supported by the evidence. Ex parte SE Prop. Holdings, LLC, 353 So. 3d 533, 537 (Ala. 2021). "[T]he inability to comply with the trial court's

11

judgment is a valid defense in contempt proceedings." Stamm v. Stamm, 922 So. 2d 920, 924 (Ala. Civ. App. 2004).

The transcript of the contempt hearing demonstrates that, at the time of the hearing, Coan had been employed for approximately 10 months as a caregiver for elderly and disabled persons; that she made her own work schedule; that she was capable of making between $20 and $27 per hour; and, that, if she desired, she could work every day of the week, up to 12 hours a day. At the hearing, Coan claimed that she had not complied with the escrow order because, she said, she had only learned of the order around May 26, 2023, when she was in North Carolina helping her aunt who had cancer. Coan stated that, while she was in North Carolina, her attorney had sent her text messages, presumably about the escrow order, but she claimed that she never received those text messages. Coan also presented conflicting testimony regarding her ability to pay the court-ordered payments. Initially, Coan repeatedly represented to the trial court that she had the ability to pay the court-ordered payments. On direct examination, Coan's attorney replied that he was "baffled" as to why Coan had represented to the trial court that she had the ability to pay the court-ordered payments when

she had told him that she did not have the ability to pay. Coan testified, in relevant part:

"[The trial court]: The question was[,] did you have the ability to make those payments? Not whether you've seen the order.

"[Coan]: Yes, I have the ability to make payments. I'm willing to do that.

"....

"[The trial court]: I understand ... but it's represented to the Court that you do not have the present ability to pay the court ordered monthly payments: is that true? Do you have the present ability to pay the court ordered monthly payments?

"....

"[Coan]: Yes, sir.

"....

"[The trial court]: I'm just trying to -- I'm just asking you to help me reconcile what the representation was to the Court that there was a recent, unfortunate, personal, financial hardship that prohibited you from making payment. What would be that unfortunate, personal hardship?

"[Coan]: I'm not sure what you're referring to.

"....

"[Attorney for Championship]: All right. So[,] what I understand and correct me if I'm wrong, what I understand is that per your testimony ... you had the ability to [pay the $800

per month when the trial court entered its March 9, 2023, escrow order]?

"[Coan]: If I had known, yes.

"….

"[Attorney for Championship]: Okay. When did -- when did you find out that you were supposed to be paying eight hundred dollars a month?

"[Coan]: When I was out of town in North Carolina [around May 26].

"….

"[The trial court]: You didn't find out[?] You weren't told that I assume from your lawyer until May [when] you were actually in the Carolinas?

"….

"[Coan]: [My attorney] had sent me some text messages. For some … reason I did not get those, and I do not delete text messages and I still have where he's screen shotted and sent me a picture where he sent me the messages, but I never received the text messages. …

"….

"[Attorney for Championship]: All right. So now then for June, for instance, [June 1,] you would've had [a payment due]. You would've known about that in May. [Did you make the June 1 payment]?

"[Coan]: I haven't made any payment and I don't even know who I'm supposed to make a payment to at this point because I didn't have that information.

"....

"[The trial court]: All right. So, Ms. Coan, let's say from [2018] until the pandemic in March [2020]. Why weren't [any] payments made during that period of time?

"[Coan]: I wasn't aware that I was behind on payments.

"....

"[The trial court]: So[,] have you basically lived in this home since, let's say, the summer of [2017] up until now, the summer of [2023], six-years range[,] rent free? Have you paid any rent in the last years?

"....

"[Coan]: I guess no.

"....

"[Attorney for Coan]: … I'm a little bit baffled because what you indicated to [the trial court] is that you're able to pay and you indicated to me that you're not.

"[Coan]: I indicated to you that I was willing to pay."

Coan's attorney then proceeded to elicit testimony from Coan regarding her monthly bills and expenses. Coan stated that, after she paid all of her monthly bills, she did not have any additional money to pay into the court. Coan then candidly admitted to the trial court that, although she paid all her monthly bills, she did not pay the $800 per month that the court had ordered her to pay. Coan finally offered various

excuses that, she claimed, led to her inability to pay the monthly court-ordered payments. It is unnecessary to delve any further into the evidence because the transcript clearly demonstrates that Coan gave conflicting testimony regarding her ability to pay the monthly court-ordered payments. It was the duty of the trial court, and not this Court, to make credibility determinations regarding Coan's testimony. See Ex parte Hayes, 70 So. 3d 1211, 1215 (Ala. 2011) ("When evidence is presented ore tenus, it is the duty of the trial court, which had the opportunity to observe the witnesses and their demeanors, and not the appellate court, to make credibility determinations and to weigh the evidence presented."); and S.A.T. v. E.D., 972 So. 2d 804, 809 (Ala. Civ. App. 2007) (holding that the trial court was in the best position to determine whether the mother's excuse for noncompliance with a visitation order was credible). Because there is evidence in the record to support the trial court's determination that Coan willfully failed or refused to comply with the escrow order, this Court will not review the propriety of the trial court's rationale for finding Coan in contempt or disturb its contempt finding on appeal.

## C. The Contempt Sanction

16

Coan finally argues that the trial court erred when it awarded Championship possession of the property as a sanction without first ruling on the merits of her counterclaims and third-party claims regarding the validity of the foreclosure. It is undisputed that, once the trial court found Coan in contempt for failing to comply with the escrow order, it was within the court's discretion to impose sanctions. Thus, the only question presented here is whether the sanction imposed is appropriate to the circumstances. See Ex parte Sears, Roebuck & Co., 882 So. 2d 326, 328 (Ala. 2003) ("The trial court acted within its discretion to impose sanctions; the only question before us is whether the sanction imposed is appropriate."). In the contempt order, the trial court indicated that it had considered several possible sanctions based on Coan's noncompliance with the escrow order. Nonetheless, it sanctioned Coan by awarding Championship possession of the property before ruling on the merits of Coan's counterclaims and third-party claims regarding the validity of the foreclosure. See Larsen v. WF Master REO, LLC, 360 So. 3d 357, 368 (Ala Civ. App. 2022) (noting that, "[i]n an ejectment action, the defendant may collaterally attack a foreclosure sale as void to show that the plaintiff never acquired valid and enforceable title to the

17

property so as to maintain the ejectment action"). If Coan prevails on her counterclaims and third-party claims alleging that the foreclosure sale was void, then Championship never acquired valid and enforceable title to the property as required to maintain an ejectment action. In fact, if the trial court determines that the foreclosure was invalid, what remedy can the court impose given that it has already awarded possession of the property to Championship and Championship has, in turn, admittedly rented or perhaps, by now, sold the property? Under the circumstances presented, we conclude that the sanction is counterintuitive to the current posture of the litigation and, therefore, not appropriate. Accordingly, we reverse that portion of the contempt order awarding Championship possession of the property.

## III. Conclusion

We conclude that, under the facts and circumstances presented in this case, the trial court had the authority to enter the escrow order requiring Coan to deposit $800 per month with the clerk of the court. We further conclude that the trial court did not exceed its discretion in finding Coan in contempt for failing to comply with the escrow order. However, we reverse that portion of the contempt order awarding

Championship possession of the property and remand the case to the trial court for further proceedings consistent with this opinion.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.

Mendheim, J., concurs in part and concurs in the result, with opinion, which Wise, J., joins.

Cook, J., concurs in part and concurs in the result in part, with opinion, which Parker, C.J., and Stewart and Mitchell, JJ., join.

Shaw and Bryan, JJ., concur in the result.

MENDHEIM, Justice (concurring in part and concurring in the result).

I concur in the result as to Part II.A. of the main opinion; I concur as to all other parts of the main opinion.

Wise, J., concurs.

COOK, Justice (concurring in part and concurring in the result in part).

I concur fully with the main opinion's conclusion in Part II.B. that Crystal Kaye Coan willfully disobeyed the Lauderdale Circuit Court's original order requiring her to deposit $800 monthly payments with the clerk of that court ("the escrow order") and thus believe that that court was entitled to find her in contempt for such disobedience. However, for the reasons stated below, I concur in the result with regard to Part II.A., regarding the validity of the escrow order, because I view that order as a preliminary injunction. I also concur in the result with regard to Part II.C., which concludes that the trial court's sanction for contempt was inappropriate. I write separately to distinguish the sanctions permissible for civil contempt and for criminal contempt, respectively, for the benefit of the Bench and Bar.

## Part II.A. -- The Escrow Order

First, although not discussed by the trial court or the parties, I believe that the escrow order operated as a preliminary injunction because it commanded Coan to deposit $800 monthly payments with the clerk of the trial court. See Lem Harris Rainwater Fam. Tr. v. Rainwater, 344 So. 3d 331, 335 (Ala. 2021) (explaining that an "order [is] injunctive

in nature" when "it command[s] the parties to take specific action"); Kappa Sigma Fraternity v. Price-Williams, 40 So. 3d 683, 690 (Ala. 2009) ("'An injunction is defined as "[a] court order commanding or preventing an action."'" (quoting Black's Law Dictionary 788 (7th ed. 1999))); Dawkins v. Walker, 794 So. 2d 333, 335 (Ala. 2001) ("Because the order [in question] direct[ed a party] to take action, … we conclude that the order, though styled [otherwise,] was injunctive in nature."). Additionally, the main opinion notes that the escrow order "was designed as an equitable remedy to maintain the status quo" and that "the trial court made clear in the escrow order that it intended to 'properly award any accumulation' of the escrowed funds at the conclusion of the action." ____ So. 3d at ____, ____ (emphasis added). Our Court has previously recognized that such an order is in alignment with a preliminary injunction. See Irwin v. Jefferson Cnty. Pers. Bd., 263 So. 3d 698, 702-03 (Ala. 2018) ("[T]he purpose of … preliminary injunctive relief is to maintain the status quo pending the resolution of the action on its merits." (emphasis added)).

Because I believe that the escrow order was a preliminary injunction, the trial court would have been required to comply with the

22

requirements of Rule 65, Ala. R. Civ. P.[5] Our Court has previously explained that, under that rule, "'it is mandatory that a preliminary-injunction order give reasons for the issuance of the injunction, that it be specific in its terms, and that it describe in reasonable detail the act or acts sought to be restrained.'" City of Helena v. Pelham Bd. of Educ., 375 So. 3d 750, 753 (Ala. 2022) (quoting Monte Sano Rsch. Corp. v. Kratos Def. & Sec. Sols., Inc., 99 So. 3d 855, 863 (Ala. 2012)); see also Rule 65(d)(2).

When issuing such an order, a trial court is thus required to include its specific findings on the elements of a preliminary injunction, which include whether: (1) "'the party would suffer irreparable harm without the injunction,'" (2) "'the party has no adequate remedy at law,'" (3) '"the party has at least a reasonable chance of success on the ultimate merits of the case,'" and (4) "'the hardship that the injunction will impose on the

---

[5]Although I am not inclined today to suggest an absolute rule for all circumstances, I am unaware of any authority for a trial court to enter an order mandating affirmative action by a party at a preliminary stage in an ordinary civil action, absent a showing that the requirements of Rule 65 or another Rule of Civil Procedure -- for instance, Rule 37 (addressing discovery sanctions), Rule 64 (addressing prejudgment "seizure of person or property"), or Rule 66 (addressing appointment of "receivers") -- or the requirements of an applicable statute have been met.

opposing party will not unreasonably outweigh the benefit accruing to the party seeking the injunction.'" Ex parte Alabama Dep't of Youth Servs., [Ms. SC-2023-0627, Mar. 29, 2024] ___ So. 3d ___, ___ (Ala. 2024) (quoting City of Helena, 375 So. 3d at 752).

Rule 65 also prohibits a trial court from issuing a preliminary injunction without requiring adequate security from the party seeking the injunction, absent some applicable exception.[6] See Rule 65(c) ("No restraining order or preliminary injunction shall issue except upon the giving of security by the applicant, in such sum as the court deems proper …."); Spinks v. Automation Pers. Servs., Inc., 49 So. 3d 186, 191 (Ala. 2010) ("Alabama law … clearly provides that '[i]t is mandatory that security be given under Rule 65(c), "unless the trial court makes a specific

---

[6]Rule 65(c) expressly provides the following exceptions to the requirement of adequate security: "[N]o such security shall be required of the State of Alabama or of an officer or agency thereof, and provided further, in the discretion of the court, no such security may be required in domestic relations cases." Moreover, this Court has also recognized other exceptions, "'"such as requiring only a nominal security, or where the litigant is impecunious or the issue is one of overriding public concern."'" Spinks v. Automation Pers. Servs., Inc., 49 So. 3d 186, 190 (Ala. 2010) (quoting Anders v. Fowler, 423 So. 2d 838, 840 (Ala. 1982), quoting in turn Lightsey v. Kensington Mortg. & Fin. Corp., 294 Ala. 281, 285, 315 So. 2d 431, 434 (1975)).

24

finding   based upon competent evidence that [an] exception[] … exist[s]."'" (quoting <u>Anders v. Fowler</u>, 423 So. 2d 838, 840 (Ala. 1982))).

The main opinion appears to discuss factors that might support a preliminary injunction in this case, and I believe that a preliminary injunction could be appropriate in an ejectment action such as this case, depending upon the facts. Thus, pursuant to Rule 65, I believe the trial court here could have considered the apparent inability of Championship Property, LLC ("Championship"), to insure the property and the need for someone to pay the property taxes to avoid a tax sale, which suggest an irreparable harm and the lack of an adequate remedy at law.[7] Similarly,

---

[7]I note briefly that, "where a [party] alleges a <u>purely</u> monetary loss and <u>seeks only to recover damages</u> for that alleged loss, the injury is not irreparable because the monetary damages the [party] seeks constitute an adequate remedy at law." <u>Slamen v. Slamen</u>, 254 So. 3d 172, 175 (Ala. 2017) (plurality opinion) (emphasis added). Moreover, a mere allegation that a party would "'suffer economic hardship if relief is delayed'" is generally insufficient to demonstrate irreparable harm. <u>Woodward v. Roberson</u>, 789 So. 2d 853, 856 (Ala. 2001).

In the present action, Championship sought to eject Coan from the property, which is not a purely monetary remedy. Further, Championship's inability to insure the property would arguably render any monetary relief inadequate. As noted by the main opinion, "Coan has conceded that, if anything happens to the property, it would just 'be gone.'" ____ So. 3d at ____. This Court has recognized in the context of real-estate transactions that "'"a specific tract [of real property] is unique and impossible of duplication by the use of any amount of

the trial court could have also included findings on the balancing of the hardships between Coan and Championship. In my view, because the escrow order "essentially places no obligation on Coan that did not already exist," ___ So. 3d at ___, the hardship on Coan to make the monthly payments is minimal,[8] and the payments would be maintained by the clerk of the trial court so that nothing would be lost by Coan if ultimately she won this case. By contrast, Championship had the responsibility to pay taxes and expenses associated with insurance without having possession of the property. Considered together, these

---

money."'" Cooper v. Durham, [Ms. SC-2022-0965, Aug. 25, 2023] ___ So. 3d ___, ___ (Ala. 2023) (quoting Downing v. Williams, 283 Ala. 551, 554, 191 So. 221, 222-23 (1939), quoting in turn 2 Restatement of the Law of Contracts § 360 cmt. a. (Am. Law Inst. 1932)). Accordingly, I believe that Championship arguably suffered an irreparable harm and had an inadequate remedy. Further, at least according to the allegations, Coan has no existing interest in the property, except her possession of it, and thus has no incentive to avoid damage to the property and has no insurable interest in the property.

In any event, discussed infra, it is not necessary to resolve the question whether Championship had an adequate remedy in the form of monetary damages because Coan failed to appeal the injunctive order within 14 days. See Rule 4(a)(1)(A), Ala. R. App. P.

[8]For instance, the $800 monthly payment is less than Coan's preexisting mortgage payment.

26

factors might have supported the issuance of a preliminary injunction in this case (had the success-on-the-merits factor also been addressed).

However, even if this Court were to treat the escrow order as a preliminary injunction (as I believe it should), Coan failed to appeal that order within 14 days and thus waived any argument relating to the injunctive nature of that order. See Rule 4(a)(1), Ala. R. App. P. ("In appeals from the following orders or judgments, the notice of appeal shall be filed within 14 days (2 weeks) of the date of the entry of the order or judgment appealed from: (A) any interlocutory order granting, continuing, modifying, refusing, or dissolving an injunction …."). It is for this reason that I would uphold the enforceability of the escrow order.

To be clear, I concur with the holding of the main opinion that a trial court has the power in the appropriate case to issue an order requiring some payment from a person possessing real property, before the entry of a final judgment in an ejectment action, including when a foreclosure has occurred or when the possessor is a squatter on the property. I merely differ with the main opinion regarding the basis for such an order -- that is, I believe that all the requirements of Rule 65 must be met before the issuance of such an order.

<u>Part II.C. -- The Contempt Sanction</u>

With respect to the trial court's decision to rule in favor of Championship on its ejectment claim as a sanction for Coan's contempt, I write separately to explain the difference between a sanction for criminal contempt and a sanction for civil contempt and why I believe that, regardless of the contempt classification, the trial court's sanction against Coan was improper. In a civil proceeding, a contempt finding may be civil, criminal, or both. <u>See</u> <u>State v. Thomas</u>, 550 So. 2d 1067, 1072 (Ala. 1989); <u>Norland v. Tanner</u>, 563 So. 2d 1055, 1058 (Ala. Civ. App. 1990). Regardless of whether the contempt was civil or criminal, "'a contemnor must be in a position to purge himself from the contempt.'" <u>Davenport v. Hood</u>, 814 So. 2d 268, 272 (Ala. Civ. App. 2000) (quoting <u>Hill v. Hill</u>, 637 So. 2d 1368, 1370 (Ala. Civ. App. 1994)).

Criminal contempt includes the "[w]illful disobedience or resistance of any person to a court's lawful writ, subpoena, process, order, rule, or command, where the dominant purpose of the finding of contempt is to punish the contemnor." Rule 70A(a)(2)(C)(ii), Ala. R. Civ. P.; <u>Charles Mfg. Co. v. United Furniture Workers</u>, 361 So. 2d 1033, 1035 (Ala 1978) ("[A] criminal contempt is one in which the purpose of the proceeding is to

impose punishment for disobedience of orders of the court."). A sanction for criminal contempt is limited by statute: "The circuit court may punish contempts by fines not exceeding one hundred dollars ($100) and by imprisonment not exceeding five days." § 12-11-30(5), Ala. Code 1975.

Civil contempt is defined as the "[w]illful, continuing failure or refusal of any person to comply with a court's lawful writ, subpoena, process, order, rule, or command that by its nature is still capable of being complied with." Rule 70A(a)(2)(D). Although a trial court making a civil-contempt finding is not confined by the limitations provided in § 12-11-30(5) ("The power of the circuit court to enforce its orders … by determinations of civil contempt shall be unaffected by this section."), "[a] key element of a finding of civil contempt is that such a finding is intended to compel compliance." J.S. v. L.M., 251 So. 3d 61, 66 (Ala. Civ. App. 2017) (emphasis added). That is, civil-contempt sanctions "seek[] to compel or coerce compliance with orders of the court," Thomas, 550 So. 2d at 1072; see Kyle v. Kyle, 128 So. 3d 766, 771 (Ala. Civ. App. 2013), and the sanction imposed "'"continues indefinitely until the contemnor performs as ordered."'" Davenport, 814 So. 2d at 272 (quoting Hill, 637 So. 2d at 1370, quoting in turn Thomas, 550 So. 2d at 1072).

29

In the present case, the trial court's sanction is improper regardless of whether the contempt was criminal or civil. If the contempt was criminal, the sanction -- which dispossessed Coan of the property -- was outside the two permissible sanctions listed in § 12-11-30(5). If the contempt was civil, the trial court had discretion to fashion a sanction that would compel compliance with the escrow order. Thomas, 550 So. 2d at 1072. Here, however, the trial court's ejectment of Coan from the property does not seek to <u>coerce Coan to comply with the escrow order directing her to make the monthly payments</u>. The contempt order specifically states: "Any claim or right, if any, to possession by Crystal Coan is hereby TERMINATED." (Capitalization in original.) This does not suggest that Coan would regain possession of the property if she made the payments -- and thus does not incentivize her to do so. Moreover, as noted by the main opinion, the trial court exceeded its discretion in prematurely awarding Championship possession of the property before ruling on Coan's counterclaims and third-party claims.

Accordingly, regardless of the contempt classification, the sanction at issue in this case is not appropriate. See Willis v. Willis, 329 So. 3d 650, 662 (Ala. Civ. App. 2020) (noting that "'[t]he failure of [a] trial court

to limit [a criminal-contempt] punishment to the statutory maximum requires reversal of the court's order'" (quoting <u>Lowe v. Lowe</u>, 561 So. 2d 240, 242 (Ala. Civ. App. 1990))); <u>Kyle</u>, 128 So. 3d at 772 (concluding that a sanction was "not permitted under a finding of civil contempt pursuant to Rule 70A" when it was not "an effort to coerce [the contemnor] into making [court-ordered] payments"). I therefore concur in the result with regard to the main opinion's resolution of this issue.

Parker, C.J., and Stewart and Mitchell, JJ., concur.